# Southern Car & Foundry Co. *v.* Adams.

*Action for Malicious Prosecution.*

1. *Malicious prosecution; what constitutes termination of prosecution.*—While an action for malicious prosecution can not be maintained before the termination of a prosecution, all that is necessary in reference thereto is that the particular prosecution or proceeding shall have been disposed of in such a manner that it can not be revived, and so that the prosecutor, if he intends to proceed further, must institute proceedings anew; and it is not necessary that the prosecution should have been judicially investigated in the sense that the charge preferred had been regularly tried by and before the arresting magistrate, and the plaintiff, as the result thereof, had been acquitted and discharged. (*Ragsdale v. Bowles*, 16 Ala. 62, asserting a contrary principle, overruled.)

2. *Same; same; sufficiency of complaint.*—In an action for malicious prosecution, a complaint which, after averring that the prosecution was instituted without probable cause and was malicious, then avers that said charge "before the commencement of this suit was dismissed in open court by said defendant through its agent or agents and by its attorneys, and said prosecution judicially ended and plaintiff discharged," sufficiently states a cause of action, and is not subject to demurrer upon the ground that it does not appear from said complaint "that said charge has been judicially investigated."

3. *Malicious prosecution against corporation; admissibility in evidence of statement of agent of defendant.*—When a criminal prosecution is instituted by a corporation through its agent, for the malicious injury to property, the person in its employment who instigated the prosecution and made affidavit for the arrest is not the prosecutor, but the corporation ·for which he acted; and, therefore, in such action, statements by the general superintendent of the defendant company before the arrest of the plaintiff was made, in encouragement and instigation of such arrest, intending to show improper motive on his part, are admissible in evidence.

4. *Same; evidence as to financial condition of defendant inadmissible.*—In an action against a corporation to recover damages for malicious prosecution, evidence offered for the purpose of showing the financial standing of the defendant is inadmissible.

5. *Action against corporation for malicious prosecution; charge to the jury.*—In an action against a corporation to recover damages for malicious prosecution, where it is shown that the affidavit upon which the plaintiff was arrested was made by the agent of the defendant, who was the foreman under whom the plaintiff was working, a charge which instructs the jury that said agent "had the right to institute the prosecution against the plaintiff without reference to his employment by the defendant, and that if he swore out the warrant on his own responsibility, and not by the authority or at the instance of the defendant, then they can not find for the plaintiff," is properly refused as being misleading.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. JOHN PELHAM.

This was an action to recover damages for malicious prosecution brought by the appellee, Lewis Adams, against the Southern Car & Foundry Company. After demurrers to the original complaint were sustained, said complaint was amended, and as amended contained five counts, which were as follows: "1. Plaintiff claims of defendant the sum of $5,000 damages for maliciously and without probable cause therefor, causing the plaintiff to be arrested upon a warrant issued by Elmore Garrett, a justice of the peace, on to-wit, the 6th day of January, 1900 on a charge of malicious mischief and injury to personal property, which charge before the commencement of this suit has been judicially investi-

gated and said prosecution ended and plaintiff discharged." "2. Plaintiff claims of defendant the sum of $5,000 damages for maliciously and without probable cause therefor, causing the plaintiff to be arrested upon a warrant issued by Elmore Garrett, a justice of the peace, on to-wit, the 6th day of January, 1900, on a charge of malicious mischief and injury to personal property, which charge, before the commencement of this suit, was dismissed in open court by said defendant, through its agent or agents and by its attorney, and said prosecution judicially ended and plaintiff discharged." "3. Plaintiff claims of defendant the sum of $5,000 damages for that on, to-wit, the 6th day of January, 1900, Chas. W. Cook, who was on the date aforesaid night superintendent of the rolling mill of said defendant, Southern Car & Foundry Company, and whose duty and business it was, under said employment, to act as agent for said defendant in looking after and superintending the employees and machinery of said rolling mill, while acting in the line and scope of his authority as such agent, and at the instance of said defendant and by its authority caused plaintiff to be arrested and imprisoned, by appearing before Elmore Garrett, a justice of the peace, and maliciously and without probable cause therefor, upon affidavit, procured the issuance of a warrant against said plaintiff, charging him with malicious mischief and injury to personal property, and that by reason of said false and malicious affidavit, and the warrant issued thereon, defendant as aforesaid, was arrested and imprisoned on said charge, from to-wit, the 6th day of January, 1900, to the afternoon of the 8th day of January, at which time defendant appeared by its agent or agents and through its attorney dismissed said prosecution, and the same was judicially ended and terminated and defendant discharged."

The fourth count was substantially the same as the third count, except that it set out *in haec verba* the affidavit of complaint made by Chas. W. Cook before the justice of the peace and the warrant of arrest which was issued by the justice of the peace. The averments as to the disposition and termination of the prosecution were

the same as that contained in each of the preceding counts. The fifth count was substantially the same as the third count. The difference between the counts of the complaint, as amended, and those contained in the original complaint, is sufficiently shown in the opinion. The demurrers to the amended complaint are also sufficiently shown in the opinion. These demurrers were overruled, and thereupon the defendant pleaded the general issue.

On the trial of the cause the plaintiff introduced in evidence the complaint which was made out before Elmore Garrett, as justice of the peace, and which was signed by Chas. W. Cook. This complaint, omitting the signature and the State and county, was in words and figures as follows: "Before me, Elmore Garrett, a justice of the peace in and for said county, personally appeared C. W. Cook, who being duly sworn deposes and says that he is night superintendent of the rolling mill of the Southern Car & Foundry Company, at Anniston, Alabama, and that he has probable cause to believe and does believe that in said county and State and on or about January 5th, 1900, Lewis Adams unlawfully and maliciously broke and injured a piece of machinery of the Southern Car & Foundry Company, to-wit, a jaw of a large pair of shears, against the peace and dignity of the State of Alabama." The plaintiff also introduced in evidence the warrant issued by the justice of the peace upon this complaint, which stated that the plaintiff in the present suit was charged with having committed the offense of malicious mischief and injury to personal property. It was further shown by the evidence for the plaintiff that he was arrested under the warrant issued upon said complaint on January 6, 1900, was imprisoned and remained until January 8, 1900, when the prosecution was dismissed by order of the defendant's attorney; the justice of the peace testifying that said attorney told him that he did not think the case as charged could be made out, and that he, the justice of the peace, could dismiss the case against the defendant, who is the plaintiff in the present suit. The justice of the peace further testified that the costs of the case were paid by direction of the general

superintendent of the defendant's plant upon the order
given therefor by C. W. Cook, who made the affidavit
and complaint before him against the plaintiff in the
present suit.   It was then shown that in accordance with
the direction of the attorney of the defendant said prose-
cution against the plaintiff in the present suit was dis-
missed and was so entered upon the docket of the court,
and that the costs in the suit were paid by the defendant
in the present suit.   It was further shown that the
prosecution was commenced by reason of shears used
in the rolling mill of the defendant being broken while
operated by the plaintiff; that these shears were used
for cutting up scrap iron; and that they were broken
while the plaintiff was trying to cut a large piece of
steel, which the evidence for the defendant tended to
show was contrary to the orders given to the plaintiff.
It is unnecessary, however, to set out this evidence in
detail.   The facts relating to the ruling of the trial
court upon the evidence are sufficiently stated in the
opinion.

Upon the introduction of all the evidence the defend-
ant requested the court to give to the jury, among others,
the following written charges, and separately excepted
to the court's refusal to give each of them as asked:
(1.)   "If the jury believe the evidence, they will find
the issues in favor of the defendant."   (2.)   "The court
charges the jury that Chas. W. Cook had the right to
institute the prosecution of the plaintiff without ref-
erence to his employment by the defendant, and that if
he swore out the warrant on his own responsibility and
not by the authority, or at the instance of the defend-
ant, then they can not find for the plaintiff."

There were verdict and judgment for the plaintiff,
assessing his damages at $250.   Defendant appeals, and
assigns as error the several rulings of the trial court
to which exceptions were reserved.

WILLETT & BROTHERS, for appellant.—The second,
third, fourth and fifth counts of the complaint were in-
sufficient and defective for the reason that they did not
aver that the prosecution was judicially investigated
and said prosecution ended and plaintiff discharged.
We insist that the form which is prescribed by statute

for this suit in this State settles it so far as our courts are concerned, that there must be a judicial investigation of the criminal defendant, and that the prosecution must be *ended;* that is, that under our bill of rights there can be no revival of the prosecution by indictment or information before the defendant can sue and recover in this action. "So if it was a *criminal prosecution,* the like evidence must be given of its termination. And it must appear that the plaintiff was *acquitted* of the charge. It is not enough that the indictment was ended by the entry of a *nolle prosequi.*"—2 Greenleaf's Evidence (14th ed.), § 452 and the authorities cited in the footnotes; *Ragsdale v. Bowles,* 16 Ala. 62.

The reason of this rule is of great force, because, if a prosecution is dismissed without judicial investigation and an ending of the prosecution, and a discharge of the defendant, he might sue and recover damages when really guilty of the charge and might be convicted after he had recovered damages against the prosecutor. If the charge against him was not "judicially investigated" and said "prosecution ended" and the "plaintiff discharged," or, in other words, if he has not been tried before a court of competent jurisdiction and acquitted, he cannot maintain an action for malicious prosecution. Such, we contend, to be the law of Alabama.—*Ragsdale v. Bowles,* 16 Ala. 62.

It was error for the court to permit the witness Sweets to testify to the statements made to him by Stimpson, the superintendent of the defendant with regard to the arrest of the plaintiff. These statements and declarations of Stimpson constitute no part of the *res gestae* in procuring the arrest and had no tendency to show that the warrant was sworn out by Cook at his instance and request, or that of any agent of the defendant.—*A. G. S. R. R. Co. v. Hawk,* 72 Ala. 112; *M. & C. R. R. Co. v. Maples,* 63 Ala. 601; *Brown v. Masters,* 111 Ala. 397; *Com. F. Ins. Co. v. Morris & Co.,* 105 Ala. 498.

It was error for the court to permit the plaintff to show that the defendant was a large and wealthy corporation, employing 800 men, and that it was engaged in making cars. The whole object and purpose of this

testimony admitted, against the objections of the defendant, was to show that it was a large and wealthy corporation and doing a large business in the manufacture of cars, and, therefore, should be heavily mulcted in damages. The wealth or poverty of the defendant had nothing to do with its guilt or innocence of a malicious prosecution, or with the amount of damages the defendant should pay. It does not tend to show that the defendant instituted the prosecution, or that it was done maliciously and without probable cause. The law recognizes no distinction between poverty and wealth in its administration, even when punitive damages are to be awarded, and there is no distinction between individuals and corporations in this respect. If proof of wealth or high social position can aggravate damages, the proof of poverty of the defendant or plaintiff, or their humble condition in life ought to be permitted to mitigate damages. As stated by Mr. Justice R. W. Walker, in *Gandy v. Humphries,* 35 Ala. "this rule is hostile to the genius of our institutions, and we are unwilling to follow it." This testimony was clearly erroneous.—*Ware v. Cartledge,* 24 Ala. 622; *Pool v. Devers,* 30 Ala. 672; *Gandy v. Humphries,* 35 Ala. 627; *Barbour County v. Horn,* 48 Ala. 566; *L. & N. R. R. Co. v. Binion,* 107 Ala. (645) 653; 2 Greenleaf on Evidence (14th ed.), § 269.

H. D. McCARTY and D. C. BLACKWELL, *contra.*—The several counts of the complaint in this case were sufficient and not subject to demurrer. An allegation that the criminal prosecution "terminated in favor of the party bringing this action" is sufficient.—14 Am. & Eng. Ency. Law (1st ed.), 42, 43. A complaint in such action averring that "on motion and request of the defendant, made in person, said affidavit, prosecution and charges were dismissed and plaintiff was not required to go to trial thereon" sufficiently shows that the prosecution has ended.—*Clegg v. Waterbury,* 88 Ind. 21; 14 Am. & Eng. Ency. Law (1st ed.), 43, note 1. "It is a well recognized general rule that no action for malicious prosecution will lie until the proceedings complained of have been legally terminated in favor of

defendant therein."—14 Am. & Eng. Ency. Law (1st ed.), 18, 28; *McLeod v. McLeod,* 75 Ala. 483; *Foster v. Napier,* 73 Ala. 606; 12 Am. & Eng. Ency. Law (2d ed.), 31, 32; *A. G. S. R. R. Co. v. Sellers,* 93 Ala. 9; *A. G. S. R. R. Co. v. Frazier,* 93 Ala 45; *K. C., M. & B. R. R. Co. v. Phillips,* 98 Ala. 68; *Western Union Tel. Co. v. Seed,* 115 Ala. 670.

The statements made by Stimson, the superintendent of the defendant corporation, and the constable who made the arrest of the plaintiff were admissible in evidence.

"The conduct and movements of the prosecutor on the day of the plaintiff's arrest, while he was in the custody of the sheriff and attempting to give bail, are competent evidence for the plaintiff, as tending to show the degree of interest on the part of defendant in the prosecution and bearing on the question of an improper motive on his part."—*Motes v. Bates,* 74 Ala. 374; *Marks v. Hastings,* 101 Ala. 172.

The testimony of defendant's servant can not be offered in evidence in an action for malicious prosecution, where punitive damages may be allowed. This is contrary to the object and rule of the law in allowing the awarding of punitive or exemplary damages.—*Day v. Woodstock,* 13 How. 363; *Scheppel v. Norton,* 38 Kans. 567. The true theory of exemplary damages is that of punishment, or an example to deter others from its repetition.—*A. G. S. R. R. Co. v. Sellers,* 93 Ala. 15; *Mobile Fur. Co. v. Little,* 108 Ala. 399; *Ware v. Cartledge,* 24 Ala. 622; *Coleman v. Allen,* 11 Am. St. Rep. 449; *Grable v. Musgrove* (4 Ill. 372) 38 Am. Dec. 88; *Hasley v. Brooks* (20 Ill. 372) 71 Am. Dec. 252; *Goddard v. Ry. Co.* (57 Me. 221) 2 Am. Rep. 39; *Beck v. Dowell* (111 Mo. 506) 33 Am. St. Rep. 547; *Frye v. Burnett,* 4 Duer (N. Y.) 247; *Lewis v. Chapman,* 19 Barb. (N. Y.) 247; *McConnell v. Hampton,* 12 Johns. (N. Y.) 235; *Bump v. Betts,* 23 Wend. (N. Y.) 80; *Hayner v. Cowden,* 22 Am. Rep. 303; *Henneky v. Smith,* 40 Am. Rep. 43.

HARALSON, J.—This is an action for malicious prosecution under section 5090 of the Code.

[Southern Car & Foundry Co. v. Adams.]

1. The first count in the complaint is in Code form for such an action.—Code, p. 947, form 20. The demurrer to this count is, that the complaint being for "malicious mischief and injury to personal property," does not sufficiently describe the property. We need not notice the demurrer, however, since it is not insisted on in argument of counsel.

The demurrer to the other counts was, among other grounds, that they do not aver that said charge had been judicially investigated. The second count avers, that the "charge before the commencement of this suit was dismissed in open court by said defendant, through its agent or agents and by its attorneys, and said prosecution ended and plaintiff discharged." The others are to the same effect and in nearly the same language. The demurrers to these counts were sustained. The plaintiff amended, the 2d count as amended averring "which charge, before the commencement of this suit, was dismissed in open court by said defendant, through its agent or agents and by its attorneys, and said prosecution judicially ended and plaintiff discharged," and the others, as amended, make the same averments in substance, the only difference between the amended and original counts, as to this matter being that the word, "judicially," was inserted before the word, "ended," making them read, that the same were judicially ended and terminated and plaintiff discharged.

2. The defendant demurred to the 2, 3 and 5 counts of the complaint as amended on the ground, that it does not appear therefrom, "that said charge has been judicially investigated;" and further as to the 3d count, that it does not sufficiently appear therefrom, that the said Cook was authorized by the defendant to cause the arrest and imprisonment of plaintiff, or that defendant ratified the same, if it was done. To the 4th, on the same grounds assigned as to the 2d, 3d and 5th counts, and further, that it does not appear therefrom, that it was any of Cook's duties in looking after the employes in (defendant's) said rolling mill, to cause the arrest and imprisonment of the plaintiff.

In *McLeod v. McLeod*, 75 Ala. 483, which was an action for damages for malicious prosecution,

where a *nolle prosequi* was entered on the motion of the prosecutor, and which action resulted in a judgment for the plaintiff, it was held, that to. maintain an action for malicious prosecution, three facts must be shown, proof of each of which rests in the plaintiff, viz,. that the prosecution was instituted without probable cause, that it was malicious, and that it has been determined. It was further held that malice may be inferred from the want of probable cause; that the question in such cases is not whether the accused was in fact guilty, but whether the prosecutor, acting in good faith, and on the reasonable appearance of things, entertained the reasonable belief of guilt; that it is not conclusive, or even *prima facie* evidence of a want of probable cause, that the prosecutor, after setting the prosecution on foot, abandoned it, or permitted a *nolle prosequi* to be entered, and that such abandonment should be considered in determining whether, at the institution of the prosecution, there was probable cause for believing the accused was guilty of the offense charged.—*Foster v. Napier,* 73 Ala. 604; *Cotton v. Wilson,* Minor, 203.

It is everywhere held, that an action for malicious prosecution cannot be maintained before the termination of the prosecution; but it is held, that the criminal prosecution may be said to have terminated, when there is a verdict of not guilty, or when the grand jury ignores a bill; when a *nolle prosequi* has been entered or when the accused has been discharged from bail or imprisonment.—*Lowe v. Wartman,* 47 N. J. Law, 413; *Pope v. Pollock,* 4 L. R. A. (36 Ohio St.), 255, notes; 14 Am. & Eng. Ency. Law, 29-31, and notes. In the volume last cited, the principle is stated, sustained by citation of authorities, that "All that is necessary is, that the particular prosecution or proceeding shall have been disposed of in a manner that it cannot be revived, and that the prosecutor, if he intends to proceed further, must institute proceedings *de novo.*"

[Southern Car & Foundry Co. v. Adams.]

In this case it is averred, in substance, in the several counts demurred to, that the prosecutor appeared and dismissed the proceedings against the plaintiff, and the prosecution was thereby ended and plaintiff discharged therefrom. If these averments are true, a wrong was inflicted on the plaintiff, the defendant in that prosecution, for which it would be anomalous if the law did not furnish him a remedy. If it be true that the plaintiff must, in order to sustain this suit, aver and prove that the prosecution against him had been "judicially investigated," in the sense, that the charge preferred against him had been regularly tried by and before the arresting magistrate, and plaintiff, as the result thereof, had been acquitted and discharged, it is manifest, he could not maintain his action for malicious prosecution, although he may have been damaged as much in such case, as if he had been tried and acquitted. It is also apparent, he could not maintain an action for false imprisonment, for his arrest and imprisonment, since it appears that he was arrested by a proper officer, under a warrant regular on its face and issued by proper authority.—*Leib v. Shelby Iron Co.*, 97 Ala. 626. He would be left, therefore, remediless for what might have been a very great and improper violation of his personal rights. Such a result is not compatible with the law, which professes to furnish a remedy for every wrong. We think the counts state a good cause of action against the defendant, and the demurrers to them were properly overruled. There are authorities apparently in conflict with this conclusion, and among them, the case of *Ragsdale v. Bowles*, 16 Ala. 62, and perhaps others of our cases following it. In so far as that case or others conflict with what is here determined, they must be modified.

The other grounds of demurrer to the complaint are manifestly without merit, and are not insisted on in argument.

2. The constable, one Sweets, testified that the magistrate placed the warrant for the arrest of plaintiff in his hands; that he went to the office of defendant company, where he found Mr. Cook,—who made the affidavit for arrest, and who described him-

self therein as "night superintendent of the Rolling Mill of the Southern Car & Foundry Company, at Anniston, Ala.,"—Mr. Cocolo and Mr. Stimson being there; that he was conducted to the office of the time-keeper, and there found and arrested the plaintiff and consigned him to jail, where he was kept until the afternoon of the 8th of January, the arrest having been made on the 6th of January, 1900. He also testified that Mr. Stimson, at the time of the arrest, was the general superintendent of the defendant company; was the "head boss," and had absolute charge and control of the plant. He was asked by plaintiff, if on the day of the arrest of Lewis Adams, he had any conversation with Mr. Stimson, the superintendent, with reference to the arrest and to state the conversation. He answered, "Mr. Stimson stopped me on the street about noon of the day upon which I arrested Lewis Adams, and asked me 'if I had arrested him.' I answered that I had not, but that I would do so. Stimson then said, that he was going to have this thing of breaking his machinery stopped, or break somebody's neck." The defendant objected to the question when propounded, on grounds, "that the same was no part of the res gestae; that it was not shown that Stimson had any authority to bind defendant by any such statement as called for by the question; that it was illegal and incompetent," and after the answer, moved to exclude the same. The answer was not subject to either of these grounds of objection. Stimson had been shown to be the defendant's general superintendent, in absolute charge and control of the defendant's plant. The declaration made by him to the witness was before the arrest was made, was in encouragement and instigation of it, and tended to show improper motive on his part. When a criminal prosecution is instituted by a corporation through its agent, for a malicious injury to property, the person in its employment who instigated the prosecution, and even made the affidavit of arrest, is not the prosecutor, but the corporation for which he acted is.—*Jordan v. A. G. S. R. R. Co.*, 81 Ala. 221; 14 Am. & Eng. Ency. Law, 38-40. Corporations are responsible civilly, the same as natural persons, for wrongs committed by their

officers, servants or agents, while in the course of their employment, or which are authorized, or subsequently ratified.—*Jordan v. A. G. S. R. R. Co.*, 74 Ala. 85; *L. & N. R. R. Co. v. Whitman*, 79 Ala. 328; *Case v. Hulschbush*, 122 Ala. 217. The acts, conduct and language of a prosecutor on the day of arrest, are competent for the plaintiff in an action for malicious prosecution as tending to establish malice.—*Motes v. Bates*, 80 Ala. 382, s. c. 74 Ala. 374; *Marks v. Hastings*, 101 Ala. 172.

3. The witness, Edmondson, testifying for plaintiff, was asked by him, "Do you know how many men are employed by the Southern Car & Foundry Company?" Defendant objected to the question, as calling for incompetent, illegal and irrelevant evidence, which objections were overruled. The witness answered, "About 800," to which answer defendant excepted. He was then asked, "What business is defendant engaged in?" Objection on the same grounds as to the last question was interposed by defendant, and overruled. He answered, "Making cars," to which answer defendant also excepted. The court stated, "The court thinks it proper that the bill of exceptions should here state that the questions [stated above] and the responses thereto, are merely amplifications of proof already made, that defendant was a large concern and doing a large business, to which defendant made no objection. All the evidence was offered for the purpose of showing the financial standing of the defendant, in case the jury should see fit to give punitive damages, and was limited by counsel to that phase of the case."

The question is not new in this court. It arose, apparently, for the first time, in the case of *Ware v. Cartledge*, 24 Ala. 622, where it was held that evidence of wealth was not admissible for the plaintiff in an action of slander, and it is admitted, that the same rule, if sound, is applicable to a case of malicious prosecution. The court in that case say: "We are aware that in many actions for *torts*, in which vindictive damages are allowed to be given by the jury, proof of the value of defendant's estate has been allowed to go to the jury, both in England and the United States, but this rule is by no means universal. Conflicting authorities on the subject are to be found in English and American

books. * * * It would seem, that if such proof is allowable in order to aggravate the damages in such cases, when the defendant is wealthy, common justice would require, that a converse rule should prevail in the case of poor defendants, and they should be allowed to give their poverty in evidence to mitigate the damages. Yet nearly all the books declare, that this is not the case, and common sense revolts at the idea of its adoption. For, sad would be the fate of that country, whose laws conceded to the insolvent bully, seducer, or slanderer, the privilege of perpetrating his wrongs, with comparative impunity, under the assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice."—*Adams v. Adams,* 29 Ala. 433; *Pool v. Devers,* 30 Ala. 675; 2 Gr. Ev., § 269. The rule in many, and possibly in the majority of the States is different.—12 Am. & Eng. Ency. Law (2d ed.), 47; Newell on Mal. Pros. 527. If the question were an open one with us, there could be much said, in favor of allowing such proof; but, we prefer to follow, and not depart from our rulings on the subject, as we have been invited to do. The court erred in allowing the questions to be answered.

There was no room for the affirmative charge as requested by defendant, nor was there error in refusing its charge number 2. If not otherwise faulty, it was misleading in instructing, that Cook had the *right* to institute the prosecution against the plaintiff. This assumes, and was calculated to mislead the jury into concluding, that there was no legal wrong in the prosecution. It was also calculated to mislead, wherein it hypothesizes, that "if he swore out the warrant on his own responsibility, and not by the authority or at the instance of defendant," then they could not find the defendant guilty. "By the authority or at the instance of defendant," might be understood to imply, that some formal action on the part of the corporate authorities was necessary, to enable Cook to swear out the warrant of arrest for defendant. Moreover, if the corporation, through any of its managing officers, act-

ing for it in the line of their duty, in any way aided or abetted in suing out the warrant, the corporation would be liable.

For the error indicated, the judgment is reversed and the cause remanded.

The opinion heretofore rendered is modified, and the application for a rehearing is overruled.

Reversed and remanded.