[Civ. No. 752.   Fourth Appellate District.—May 19, 1932.]

W. H. CARROLL, Respondent, v. PACIFIC COAST AUTOMOBILE ASSOCIATION, INC. (a Corporation), Appellant.

Howard S. Lewis and Martin C. Thuesen for Appellant.

F. W. Docker and Claude Minard for Respondent.

SCOVEL, J., *pro tem.*—The complaint in this action charges the defendant with malicious prosecution. It appears that during the year 1929 plaintiff was employed by defendant in the city of Fresno as a membership and insurance solicitor. During the month of September, 1929, he was transferred to Bakersfield and given the position as general manager of defendant's branch there. Besides soliciting memberships and insurance plaintiff had supervision over all of defendant's agents working from the Bakersfield office, collected all moneys, depositing them in

his own name in the bank and paying all expenses, including commissions earned by the various salesmen. Plaintiff himself was working on a commission basis. Two or three times a week the balance remaining after the payment of expenses and salesmen's commission was forwarded to the San Francisco office of defendant by plaintiff. Plaintiff sometimes deducted his own commissions before forwarding the balance to the San Francisco office and sometimes forwarded the entire balance, the San Francisco office then sending him a check for his commissions. However, it appears that by the month of January, 1930, defendant was indebted to plaintiff in the sum of $1421 for commissions. During the month of January plaintiff endeavored to get defendant to pay this amount but was unable to do so. On February 1st he had on deposit in his account in Bakersfield the sum of $354, consisting of collections made for the company in the usual course of business during the preceding days. On February 1st plaintiff severed his connections with defendant, drew a draft payable to himself for the sum of $354 as payment to himself on account of commissions earned. He returned to Fresno and placed the draft in escrow pending a settlement with defendant. Subsequently the defendant filed a complaint in the justice's court in Bakersfield, charging defendant with grand theft, the basis of the complaint being an alleged embezzlement of the foregoing sum of $354. At the preliminary examination the action was dismissed for lack of evidence. Thereafter the complaint in this action was filed charging the defendant with malicious prosecution in reference to the criminal complaint filed in the justice's court in Bakersfield. The case was tried by a jury and a judgment of $10,254 rendered. Upon motion for new trial the verdict was reduced to $5,254 by the court and the motion for new trial denied. From this judgment the defendant appeals.

Appellant's first contention is that its motion for nonsuit and motion for an instructed verdict should have been granted, asserting that the evidence shows the plaintiff to have been in fact guilty of grand theft as charged in the criminal complaint, claiming that the $354 taken by plaintiff was money actually owned by the defendant and that it was merely withheld by plaintiff as an offset or to pay a demand of his against defendant; that such withholding

under section 511 of the Penal Code, is not a defense to a charge of embezzlement. The evidence shows, however, that plaintiff's authority as general manager of defendant's Bakersfield branch embraced the right and duty of paying obligations of defendant, including the payment of commissions earned. During the several months he was in charge, payment of all agents' commissions under him was made by him through his office. Penal Code, section 504, provides that " . . . every . . . agent of any association, society or corporation (public or private) who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust . . . is guilty of embezzlement.'' The gist of the crime consists in the appropriation to a purpose not in the due and lawful execution of the trust (*People* v. *McMahill*, 4 Cal. App. 225 [87 Pac. 404]). The taking herein, however, was for a purpose within the lawful execution of the trust, to wit, for the purpose of paying an obligation of the defendant to the plaintiff, whose authority as agent of defendant included the power to pay obligations of the defendant, and plaintiff, having been empowered by defendant to pay himself his commissions from moneys entrusted to his care, could not be guilty of embezzlement for so doing.

The court instructed the jury that if they should find from the evidence that the plaintiff was employed by defendant as manager, and as such manager he received all moneys payable to defendant and deposited the same in his own name with authority to draw checks against the same in payment of commissions and other expenses of the office, and if they should further find that on February 1, 1930, plaintiff claimed certain moneys were owing to him from defendant and had in his possession the sum of $354 collected during his employment and which he appropriated openly and avowedly under a claim of title and color or right, in good faith, and if they should further find that these acts were done by plaintiff without any criminal intent, and if they should find that with such knowledge the defendant filed a criminal complaint charging plaintiff with grand theft and procured a warrant for the arrest of plaintiff to be issued thereon, and if they should further find that in filing said complaint defendant did not fully,

fairly and truly state to the district attorney all the material facts known to defendant, and should further find that defendant had reasonable grounds for believing other facts existed which would tend to exonerate the plaintiff from the charge and did not in good faith make further inquiry with reference to the facts and circumstances and communicate the information to the district attorney, and that if they should further find that with its knowledge the defendant did not make the charge against plaintiff in good faith, there was want of probable cause for the prosecution as a matter of law. Appellant attacks this instruction, contending that the question of lack of probable cause is always one for the court and that the court should have instructed the jury directly that there was or was not want or lack of probable cause. The law in this state as to the question is laid down in *Ball* v. *Rawles,* 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937]. ▮ The rule there enunciated is that where the facts are undisputed the court should determine as a matter of law whether there was lack of probable cause, but that where the facts are controverted the jury should be instructed that if they find the facts to be in a designated way, such facts when so found do or do not amount to probable cause. (See, also, *Franzen* v. *Schenk,* 192 Cal. 572 [221 Pac. 932].)

▮ Was there any conflict in the evidence as to the facts included within the foregoing instruction? Defendant contended that it was not indebted to plaintiff but that in fact the plaintiff was indebted to it in the sum of $19 over and above the $354 in dispute. From this the jury might have found that the appropriation of the money by plaintiff was not ''openly and avowedly under a claim of title and color or right, in good faith''. Upon this disputed testimony there also devolved the question of criminal intent in the taking. It was also a question for the jury as to whether or not the defendant knew that it was indebted to plaintiff. Defendant's evidence as to the disclosure of facts to the district attorney is subject to an inference either of fairness or of concealment. Mr. Bisbee, division manager of defendant, who signed the criminal complaint, testified that he told the district attorney that all records of the company, together with the sum of $354, had been taken from the Bakersfield office by plaintiff and while he

did testify that at that time he presented to the district attorney all of the facts which he had in regard to the matter, it nowhere appears that the district attorney was informed that plaintiff had the right to pay commissions or that defendant was indebted to plaintiff. If the jury found that such indebtedness existed and that plaintiff's authority was extensive enough to permit the payment of commissions they might well have determined that a full and fair disclosure of all facts in the possession of Mr. Bisbee was not made, even though he had testified to the contrary. It also appears in evidence that after the first consultation of defendant's representatives with the district attorney or one of his deputies that a letter was written by the deputy, being plaintiff's exhibit No. 10, in which the defendant was advised that the case was not a proper one for a criminal complaint. In answer thereto defendant wrote a letter, being plaintiff's exhibit No. 8, in which it is stated that plaintiff was indebted to the defendant. Approximately one week later another letter was written by defendant to the district attorney stating that additional evidence in the matter had been received which would be laid before him. It does not appear in the transcript that such additional evidence was ever so presented. The deputy who conducted the preliminary examination, and who moved for a dismissal, testified that he told the judge at the time that the prosecution had made certain statements to him and "hadn't backed them up with the testimony". From this evidence the jury might have found that the defendant had additional information regarding the situation which it concealed or did not investigate and that the charge was therefore made against plaintiff in bad faith.

It is true that there was no conflict as to certain of the facts set forth in the instruction. For instance, it was conceded that plaintiff was employed by defendant as manager; that he received all moneys payable to defendant, deposited them in his own name with authority to draw checks against the deposit for payment of commissions and other expenses. Upon all of the other facts upon which the jury were instructed to find, there was a conflict in the evidence. It would perhaps have been better practice to have instructed the jury that the conceded facts were true. However, the error worked no prejudice to any substantial

right of the defendant and we do not feel that such error would justify a reversal.

Assuming, as we must, that the jury found in favor of plaintiff on these disputed matters, there was a lack of probable cause for the prosecution.

As to the question of malice, it may be inferred from want of probable cause (*McKenna* v. *Heinlen*, 128 Cal. 97 [60 Pac. 668]). It further appears that after the district attorney advised defendant in his letter introduced as plaintiff's exhibit No. 10 that the case was not a proper one for criminal complaint the defendant insisted upon filing a complaint. Later the defendant was advised by the deputy district attorney that "they have no show in getting a conviction. It wasn't a case for prosecution." As heretofore set forth, upon moving for a dismissal of the complaint the district attorney told the court that the defendant had made certain statements regarding the matter that it had not produced any evidence to support. Before the complaint was filed defendant stated to plaintiff that he had "better turn the money over immediately" and that if he did not they would have him arrested and "put in the penitentiary where he belonged". This evidence, together with the inference of lack of probable cause, is amply sufficient to sustain the jury's finding of malice.

The last contention of appellant is that the verdict of $5,254 is excessive. The evidence shows that plaintiff, a man fifty years of age, had lived in Fresno for fifteen years; that during this period of time he had worked for numerous concerns; that, after the filing of the criminal complaint, in seeking employment with such concerns he was told that "they didn't want anybody in their employ that was getting away with money". Considerable publicity was given the matter, both in Bakersfield and Fresno. One of the plaintiff's friends living in Fresno stated that several people asked him if he knew that plaintiff had been arrested for embezzlement; that he had heard it discussed easily 100 times; that he had heard it stated that "Carroll went bad", and that he had been referred to as a "jail-bird". Plaintiff testified that defendant, through its officers, "spread the propaganda about promiscuously and called me a thief"; that they stated publicly "they had Carroll where they wanted him and it would serve him right to be sent to

San Quentin where he belonged''. By reason of the publicity, plaintiff was unable to obtain any employment and was compelled to leave Fresno with his family.

It is of course impossible to accurately measure in dollars and cents the actual damage that a man's reputation or character will suffer by having an unfounded charge of felony filed against him. The judge who tried the case had all of the witnesses before him and was in a position to judge the apparent fairness, candor and truthfulness of their statements. While the judgment, even as reduced by him, remains substantial in amount, we are unable to say that considering the evidence of damage to defendant's reputation the verdict is the result of passion, prejudice or corruption, or grossly disproportionate to any compensation reasonably warranted by the facts (8 Cal. Jur. 834).

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 15, 1932.