[S. F. No. 16539. In Bank.—June 23, 1941.]

AARON L. JAFFE, Appellant, v. RICHARD I. STONE et al., Respondents.

Albert Picard, Werner Olds and E. Coke Hill for Appellant.

Morris, Jaffa & Sumski and Jaffa & Sumski for Respondents.

GIBSON, C. J.—Plaintiff appeals from a judgment entered after defendants' motions for judgment on the pleadings were granted.

The action was brought for damages for malicious prosecution. Defendants filed demurrers to the complaint, which were overruled, but later each defendant moved for judgment on the pleadings, on the ground that the complaint failed to state a cause of action. This ground embraced two points: first, that it failed to allege facts showing a final termination of the former criminal prosecution in favor of plaintiff herein in such manner as not to be legally susceptible of revival; and second, that it appeared on the face of the complaint that the criminal complaint charging a felony had been dismissed by a justice of the peace on motion of the accused.

The motions were granted, and judgment thereupon rendered in favor of defendants.

The complaint alleged in substance that the defendants, maliciously and without probable cause, obtained a complaint charging plaintiff with grand theft, a felony, and secured a warrant of arrest from a justice of the peace with whom the complaint was filed; that plaintiff was thereupon arrested and a preliminary hearing was had at which witnesses were examined; that plaintiff made a motion for dismissal of the proceeding on the ground that there was no evidence to prove his guilt, and that the motion was granted and the proceeding dismissed. Allegations of general and special damages followed.

The complaint thus alleges the necessary elements of an action for malicious prosecution: (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. The motion for judgment on the pleadings was directed at the sufficiency of the allegations of favorable termination, and the specific point urged is that the complaint fails to show a *final* termination of the prosecution in such a manner as to be *incapable of revival*. The issue, phrased in the language of pleading, is whether the complaint sufficiently pleads favorable termination when it alleges that the criminal proceeding was dismissed by the magistrate at the preliminary hearing for lack of evidence. But, since the motion for judgment on the pleadings, like a general demurrer, admits the facts alleged for the purpose of the motion, the real issue is one of substantive law: whether the element of favorable termination is satisfied by a dismissal of the criminal proceeding by the committing magistrate, or whether the termination must be in such a manner that the accused cannot again be charged with that particular crime. Dismissal by a committing magistrate for lack of evidence is, of course, not a bar to another prosecution for felony. (Pen. Code, sec. 1387.)

## 1. *Dismissal by magistrate as favorable termination.*

In a criminal prosecution for felony where the proceeding is by information, the accused is entitled to a preliminary examination or hearing before a magistrate. The purpose of this hearing is to determine whether a public offense has been committed, and whether there is sufficient

cause to believe the defendant guilty thereof. If a sufficient showing is made, the defendant is "held to answer" for trial in the superior court. (Pen. Code, secs. 858 et seq.) The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial. Many an unjustifiable prosecution is stopped at that point, where the lack of probable cause is clearly disclosed. The more unwarranted the charge, the more reckless and malicious the motives which inspired it, the less likelihood there is of its surviving this initial scrutiny by a judicial officer. Thus frequently the most objectionable and unwarranted prosecutions, which most clearly call for redress, are those which are terminated by dismissal by the magistrate for lack of evidence.

It is not enough, however, merely to show that the proceeding was dismissed. The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge of crime against an innocent person. If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge. The thought has also been expressed that the tort action under such circumstances would involve a collateral attack on the criminal judgment. Hence, if the criminal proceeding goes to trial, it is ordinarily necessary, as a foundation for a malicious prosecution suit, that the plaintiff should have been acquitted. (See generally, Prosser on Torts, p. 867; Harper on Torts, p. 584.) The same fundamental theory is applied in testing a dismissal or other termination without a complete trial on the merits. If it is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.

Thus, the accuser or the prosecuting officers may abandon the proceeding because of the defects in the complaint, or doubts as to the jurisdiction of the offense, with the inten-

tion of bringing a new proceeding in proper form or before a proper court. Whether this abandonment takes place before the committing magistrate or at the actual trial itself, the dismissal cannot be regarded as a favorable termination in favor of the accused. (See Rest., Torts, sec. 660, pp. 401, 399.) Similarly, if the accused manages to thwart the efforts of the officials by suppression of evidence, flight from the jurisdiction, or other acts of this nature, the abandonment of the prosecution resulting in a dismissal of the complaint cannot be used by him as the basis of an action for malicious prosecution. (See *Halberstadt* v. *New York Life Ins. Co.*, 194 N. Y. 1 [86 N. E. 801, 16 Ann. Cas. 1102, 21 L. R. A. (N. S.) 293]; Prosser on Torts, p. 869; Rest., Torts, sec. 660, p. 400.)

On the other hand, where the prosecuting officials press the charge before the committing magistrate, the accused does not seek improperly to prevent a fair hearing, and the complaint is dismissed for failure to produce a case against the defendant, there is a favorable termination sufficient to form the basis of a tort action. (See *Harrelson* v. *Johnson*, 119 S. C. 59 [111 S. E. 882]; *Empire Gas & Fuel Co.* v. *Wainscott*, 91 Okl. 66 [216 Pac. 141]; *Graves* v. *Scott*, 104 Va. 372 [51 S. E. 821, 113 Am. St. Rep. 1043, 7 Ann. Cas. 480, 2 L. R. A. (N. S.) 927]; *Robbins* v. *Robbins*, 133 N. Y. 597 [30 N. E. 977]; *Southern Car & Foundry Co.* v. *Adams*, 131 Ala. 147 [32 So. 503]; *Stewart* v. *Blair*, 171 Ala. 147 [54 So. 506, Ann. Cas. 1913A, 925]; *Sasse* v. *Rogers*, 40 Ind. App. 197 [81 N. E. 590]; Rest., Torts, sec. 659; Harper on Torts, p. 585; Prosser on Torts, p. 868; see, also, cases applying the same rule where the prosecuting attorney at the trial enters a *nolle prosequi* for lack of evidence. (*Snead* v. *Jones*, 169 Ala. 143 [53 So. 188]; *MacLaughlin* v. *Lehigh Valley R. Co.*, 93 N. J. L. 263 [108 Atl. 309]; *Dickerson* v. *Atlantic Refining Co.*, 201 N. C. 90 [159 S. E. 446]; *Hobbs* v. *Illinois Cent. R. Co.*, 182 Iowa, 316 [165 N. W. 912]; see note, 43 Harv. L. Rev. 500, criticising contrary Massachusetts rule.)

The distinction is summed up in *Halberstadt* v. *New York Life Ins. Co., supra*, as follows: " . . . Where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official, in any way involving the merits or propriety of the proceeding; or by a

dismissal or discontinuance based on some act chargeable to the complainant, as his consent or his withdrawal or abandonment of his prosecution,—a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that, where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties, or solely by the procurement of the accused as a matter of favor, or as the result of some act, trick, or device preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of such an action. The underlying distinction which leads to these different rules is apparent. In one case the termination of the proceeding is of such a character as establishes or fairly implies, lack of a reasonable ground for his prosecution. In the other case no such implication reasonably follows.''

### 2. *Necessity of "final" termination.*

In stating the requirement of termination, courts often say that the proceeding must be ''finally'' terminated. Such a statement is entirely accurate if the ordinary reasonable meaning of the words is taken. The *proceeding* must be finally terminated; that is, the particular criminal proceeding commencing, for example, by complaint and arrest, must have passed through some such stage as preliminary hearing and dismissal, or trial and acquittal or abandonment by the prosecuting authorities. When this has occurred, *that proceeding is finally terminated.* If the termination was such as not to constitute a bar to a new prosecution, the accused may be charged and tried again for the same offense; but this will be a *new proceeding,* with a new court number, new pleadings, new judge and jury, and a new judgment.

Occasionally, however, the statement is taken to mean that the proceeding must be ''incapable of revival'', and that ''final termination'' means termination which is a bar to any further prosecution for the offense, so that the accused is forever safe from prosecution. As will be seen hereinafter, this view has no substantial support in authority and is unsound in principle. But it has found expression in certain recent decisions of the District Court of Appeal, following a *dictum* in an early opinion of this court, and we shall proceed first to examine the language and holding of these cases.

The origin of this view may be traced to the case of *Carpenter* v. *Nutter,* 127 Cal. 61 [59 Pac. 301]. The complaint alleged that plaintiff was charged with grand larceny, arrested, and at the preliminary examination was *held to answer* for trial in the superior court, and two informations were filed. It was then alleged that subsequently "the plaintiff was released and discharged from custody and said informations dismissed by the Hon. Joseph H. Budd, judge of the said superior court, on the ground that there was no evidence, cause, or probability that a crime had been committed, or that plaintiff was in any way connected with the crime. . . . " A demurrer was sustained and the ruling upheld on appeal. The opinion states that there was no allegation that plaintiff was discharged by any order of the *court,* for it did not appear that the judge named in the pleading was the judge before whom the informations were pending, or that he was acting with authority as a court. The conclusion reached was that "it must, in the face of the demurrer, be conclusively presumed *that the informations are still pending,* unless it is made to appear by direct averment or by a statement of facts which show the necessary legal conclusion that the prosecution has finally ended and terminated in favor of plaintiff. There is no allegation that the plaintiff was acquitted of the charges contained in the information. It might have been alleged that he was discharged by an order of the court in which the prosecutions were pending, but this was not done." The opinion also declares that the allegations of a pleading will be most strongly construed against the pleader, a doctrine long repudiated in this state. (See *Mix* v. *Yoakum,* 200 Cal. 681 [254 Pac. 557]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 Pac. 474].)

It will be observed that this case presents a problem quite distinct from that before us here, for in *Carpenter* v. *Nutter,* the accused was not dismissed by the magistrate, but actually held to answer for trial. The main defect in the pleading, as pointed out in the opinion, was not merely a failure to allege *final* termination, but a failure to allege *any valid termination.* The equivocal statement that plaintiff was "released and discharged from custody", and the informations "dismissed" by a judge, did not satisfy the court in the malicious prosecution suit that the proceedings had been validly terminated by proper authority. Later on in the

opinion it is briefly observed, with no citation of authority, that "If it had been alleged that the information was dismissed by the court the facts would have to be alleged in such manner as to show that the dismissal was an end of the prosecution." This *dictum* cannot be deemed authority for a point to which it was not even addressed, namely, that all possible *new* prosecutions for the particular offense would have to be barred. That this point was not presented to nor deemed relevant by the court is clear from the fact that the opinion makes no attempt to lay down any new law, but purports to state the rule on termination which "has always prevailed both in England and in this country". In view of the well established law at that time and now that termination of the particular prosecution was sufficient (see *infra*), it is impossible to believe that the court intended to declare an exactly opposite rule without discussing a single case.

The idea next appears in *Wilson* v. *Troy*, 19 Cal. App. (2d) 156 [64 Pac. (2d) 1141], where the complaint alleged that plaintiff "was tried" on the charge, that the prosecution "terminated" in his favor and that the charge was thereupon "dismissed". Here, again, the plaintiff was actually held to answer for trial, and the nature and reasons for dismissal at the trial were in no way disclosed. The court discusses this defect, and then adds: "But, if under the order made, a new indictment or information may be filed, the order does not terminate the proceedings." The only authority cited is *Carpenter* v. *Nutter, supra*. To the same effect is *White* v. *Brinkman*, 23 Cal. App. (2d) 307, 317 [73 Pac. (2d) 254]. The complaint alleged dismissal by the justice of the peace, and the court declared that it "falls short of pleading a complete and final determination of the proceeding in favor of the accused beyond susceptibility of revival." No authority at all is cited on this supposed requirement. *Taylor* v. *Parsons*, 41 Cal. App. (2d) 315 [106 Pac. (2d) 638], likewise holds that a dismissal at a preliminary hearing does not constitute a final termination on the authority of *Wilson* v. *Troy, supra*.

The explanation for these holdings lies in a curious misconception of the notion of "finality". Mistaken emphasis is placed upon the idea of "final" rather than "favorable" termination; and the *offense* is confused with the *proceeding*.

When we look at the problem in the light of the background of the tort and the purpose of the requirement of favorable termination, we perceive that freedom of the accused from new prosecutions is not involved in all cases. Such freedom may be assured by an acquittal at the trial, or by some other termination at the trial to which jeopardy attaches. But where the proceeding is dismissed by a magistrate, there is no jeopardy, and no bar to a new prosecution until the statute of limitations runs on the offense. In the case of the usual felony, this is three years in California (Pen. Code, sec. 800), but in a few instances (murder, embezzlement of public money, falsification of public records) there is no limitation, and the prosecution is *never barred.* (Pen. Code, sec. 799.) Consider, then, the effect of this doctrine upon the rights of a plaintiff who is wrongfully and maliciously accused of a felony, arrested and brought before a magistrate, and is discharged because no case against him is made. He must ordinarily wait three years before he may sue for malicious prosecution. In some instances, he must wait longer; and in others it would seem that he cannot sue at all because the statute of limitations does not run on the offense. There is no rational basis for this result, nor any justification for it in policy.

This view would, moreover, introduce a new and disturbing problem of accrual of the cause of action for malicious prosecution. If in cases where the termination is not a bar to a new prosecution for the offense, the cause of action were postponed until the statute of limitations had run on the liability for the crime, the accrual of the cause of action in the civil suit would depend upon difficult questions of law as to the effect of the termination of the criminal proceeding. The result would be to permit and require one kind of malicious prosecution suits (those based on acquittals or other such final judgments) to be brought promptly; while others (those based on dismissals or abandonments or other terminations not constituting a bar) could not be brought until years afterwards, if at all, to the manifest disadvantage of the defendant as well as the plaintiff.

One more fallacy in this view may be noted. If the test were whether the termination was a bar to a new prosecution, we would expect to find that every termination which did constitute a bar would be a ''final termination'' sufficient for

a malicious prosecution suit. Yet there are situations where the plaintiff may show malice, lack of probable cause, and final termination which precludes any further prosecution for the offense, and still be unable to recover. These are the situations where after indictment or information the district attorney enters a *nolle prosequi*, formally and finally abandoning the proceedings, but does so, for example, as a result of acts of the accused preventing the procurement of evidence, or the impracticability of bringing the accused to trial. The accused is finally free from any prosecution for the offense, but his innocence has not been indicated; though *finally* terminated, the proceeding was not *favorably* terminated. (See Rest., Torts, sec. 660, and discussion therein; and cases cited *supra.*)

The correct rule is set forth in the Restatement of Torts, section 659, Comment a, as follows: "In order that there may be a sufficient termination in favor of the accused it is not necessary that the proceedings should have gone so far as to preclude further prosecution on the ground of double jeopardy. Hence, although the quashing of an indictment does not preclude the initiation of new proceedings for the same offense or for other charges growing out of the same misconduct on the part of the accused, it constitutes a termination of the original proceedings in favor of the accused unless such new proceedings have been initiated before the trial of the civil action. . . . " In the same section Comment b, it is said: "One against whom criminal proceedings have been instituted may be discharged by a magistrate at a preliminary hearing because the evidence produced against him is not such as to warrant his being held for further proceedings to determine his guilt or innocence. In such a case, the discharge is a final termination of the proceedings in favor of the accused, unless it appears that further proceedings growing out of the same misconduct on his part have been instituted." In other words, whether the proceeding is dropped by the magistrate or in the superior court, it is sufficient that *the particular proceeding* is terminated. It is immaterial whether the termination is a bar to any further prosecution for the same offense, or whether the accused may be charged and tried anew. Only if the new proceeding is already instituted can the accused be precluded from suing for malicious prosecution. This view is supported

by the great weight of authority. (See *Southern Car &
Foundry Co.* v. *Adams, supra;* *Graves* v. *Scott, supra;*
*Brooks* v. *Super Service,* 183 Miss. 833 [183 So. 484, 185 So.
202] ; *Moreau* v. *Picard,* 54 R. I. 93 [169 Atl. 920] ; *Harrelson*
v. *Johnson,* (S. C.) *supra;* 34 Am. Jur. 721, sec. 31; 38 C. J.
442, sec. 92; 14 Harv. L. Rev. 223; Newell, Malicious Prosecu-
tion, p. 349.)

*Hurgren* v. *Union Mutual Life Ins. Co.,* 141 Cal. 585 [75
Pac. 168], the only California case which discusses the princi-
ples involved, unqualifiedly supports the general rule. The
suit was brought for malicious prosecution of a civil action,
but the court treated the issue as identical with that which
would arise from a criminal prosecution, and said (p. 587) :
" . . . it is now the well-established rule that a verdict or
final determination upon the merits of the malicious civil
suit or criminal prosecution complained of is not necessary
to the maintenance of an action for malicious prosecution, but
that it is sufficient to show that the former proceeding had
been legally terminated. *The fact that such legal termina-
tion would not be a bar* to another civil suit or criminal prose-
cution founded on the same alleged cause *is no defense to
the action for malicious prosecution* . . . " The court then
reviewed a number of authorities and approved the follow-
ing statement from the syllabus in *Apgar* v. *Woolston,* 43
N. J. L. 57: "The law requires only that the particular
prosecution complained of shall have been terminated—and
not that the liability of the plaintiff for prosecution for the
same offense shall have been extinguished—before the action
for malicious prosecution is brought. Consequently, the re-
fusal of the grand jury to file an indictment, a *nolle prosequi,*
or any proceeding by which the particular prosecution is dis-
posed of in such a manner that it cannot be revived, and
that the prosecutor, if he intends to proceed further, must
institute proceedings *de novo,* is a sufficient termination of
the prosecution to enable the plaintiff to bring his action."
Whether the court had in mind the *dictum* in its former
opinion in *Carpenter* v. *Nutter, supra,* does not appear; but
it is significant that in the Hurgren case, where the point was
squarely raised and fully considered, the opinion declares
(p. 589) that "There are no decisions of this court to the
contrary."

158

It may be noted that until *Wilson* v. *Troy, supra,* was decided, a large number of cases were decided in this state in which judgments for plaintiff for malicious prosecution were upheld following dismissal of the charges by the committing magistrate. (See *Russell* v. *Dennison,* 45 Cal. 337; *Williams* v. *Casebeer,* 126 Cal. 77 [58 Pac. 380]; *Murphy* v. *Davids,* 181 Cal. 706 [186 Pac. 143]; *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *Fleischhauer* v. *Fabens,* 8 Cal. App. 30 [96 Pac. 17]; *Auener* v. *Norman,* 39 Cal. App. 425 [179 Pac. 219]; *Braga* v. *Ponte,* 50 Cal. App. 94 [194 Pac. 514]; *Krauskopf* v. *Brooking,* 59 Cal. App. 683 [211 Pac. 469]; *Pickering* v. *Havens,* 70 Cal. App. 381 [233 Pac. 346]; *Robinson* v. *McKnight,* 103 Cal. App. 718 [284 Pac. 1056]; *Green* v. *Stewart,* 106 Cal. App. 518 [289 Pac. 940]; *Gooding* v. *McAlister,* 114 Cal. App. 284 [299 Pac. 774]; *Mills* v. *Friedman,* 119 Cal. App. 74 [5 Pac. (2d) 901]; *Carroll* v. *Pacific Coast Auto. Assn.,* 123 Cal. App. 568 [11 Pac. (2d) 660]; *Diggs* v. *Arnold Bros., Inc.,* 132 Cal. App. 518 [23 Pac. (2d) 71]; *Davidson* v. *De Sousa,* 20 Cal. App. (2d) 311 [66 Pac. (2d) 740]; *Wood* v. *Lehne,* 30 Cal. App. (2d) 222 [85 Pac. (2d) 910].) They add further strength to the conviction that the *dictum* in *Carpenter* v. *Nutter* was laid at rest by the square holding of the Hurgren case, and that its revival in the decisions mentioned above was unjustified. These decisions must therefore be disapproved.

### 3. *The pleading requirement.*

■ *It has been suggested that apart from the questions* of substantive law the complaint has two serious defects of pleading. First, it is said that since the commencement of new criminal proceedings before the filing of the malicious prosecution suit would be a defense to the action (see *supra*), the complaint should allege that no such proceedings have been commenced. The answer to this contention is obvious. If such subsequent proceedings have, in fact, been commenced, defendants may so plead in their answers. But, like other defenses, this should be raised in the answer, not anticipated in the complaint. It would not involve a positive averment of fact, an element of plaintiff's cause of action; plaintiff would be simply negativing an exception to, or a qualification upon, these elements of his cause of action; he would have to single out that particular exception among others that might be raised as defenses. ■ But the salutary rule of pleading

frowns upon averments negativing or anticipating defenses, and requires that such matters be left to the answer. (*Canfield* v. *Tobias,* 21 Cal. 349, 350; *Munson* v. *Bowen,* 80 Cal. 572, 574 [22 Pac. 253]; *Weinberger* v. *Weidman,* 134 Cal. 599, 601 [66 Pac. 869].) ▉ Accordingly we are satisfied that such an allegation cannot be deemed an essential element of the cause of action.

▉ Second, it is urged that the complaint is defective in failing to plead that the proceeding was "finally" dismissed. As we have seen, the substantive law merely requires proof of the final termination of the particular proceeding. The complaint pleads the actual facts in a clear and understandable manner, alleging that the proceeding was "dismissed". "Dismissal" was the fact; its finality is a matter of legal effect and involves a question of law. To insist that the plaintiff add the word "final" or "finally" to his pleading would simply require him to plead a conclusion of law. There is no justification for such a rule.

### 4. *Considerations of public policy.*

▉ It is finally urged in support of the judgment that malicious prosecution suits are not favored. The frequency with which this statement is made in these cases calls attention to the need of some explanation. Properly applied, it means that public policy is in favor of the apprehension and punishment of criminals, and limits the person complaining of criminal charges by placing upon him the burden of proving the basic elements of the tort. These elements, viewed on the other side, furnish full defenses to the public spirited accuser or prosecutor. But where the difficult burden of proof is met by the plaintiff, recovery is allowed. This being true, we should not be led so astray by the notion of a "disfavored" action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority, or by adopting stricter requirements of pleading than are warranted by the general rules of pleading. In brief, the public policy involved has properly served, over many years, to crystallize the limitations on the tort, and the defenses available to the defendant. Having served that purpose, it should not be pressed further to the extreme of practical nullification of the tort and consequent

defeat of the other important policy which underlies it of protecting the individual from the damage caused by unjustifiable criminal prosecution. (See *Graves* v. *Scott, supra*; Rest. Torts, vol. 3, p. 380, Introductory note; Harper on Torts, sec. 268.)

The judgment is reversed.

Traynor, J., Curtis, J., Edmonds, J., Carter, J., and Shenk, J., concurred.