[Civ. No. 23722.   Second Dist., Div. Three.   Dec. 7, 1959.]

RAYMOND D. CLARY, Appellant, v. D. W. HALE et al.,
Respondents.

Otis D. Babcock for Appellant.

Berris & Cornman and Noel Cornman for Respondents.

VALLÉE, J.—Plaintiff instituted this action to recover damages for alleged malicious prosecution. The cause was tried before the court sitting without a jury, resulting in a judgment in favor of defendants from which plaintiff appeals.

Prior to the events to be related, plaintiff Raymond D. Clary had been in the trucking business about 15 years and was the owner of a truck and refrigerated trailer which he used for long-distance transportation of foodstuffs and other commodities. He had been acquainted for a number of years with defendant D. W. Hale, president of defendant Hale

Distributing Company, Inc., which acted as a broker between shippers and truckers. From time to time plaintiff had hauled commodities for D. W. Hale and also for the corporation. In July 1956 plaintiff and defendant executed a form of equipment lease whereby plaintiff leased his truck and trailer to the corporation, plaintiff agreeing to maintain the equipment in first class condition, pay all expenses incidental to the operation of the equipment, and furnish a driver acceptable to the corporation. If a driver proved unsatisfactory, the corporation had the right to terminate his employment. The corporation agreed to pay plaintiff 85 per cent of the gross revenue from shipments based on the current market freight rate. It appeared that plaintiff served as driver of the equipment at all times. He testified that when the corporation did not provide loads, he hauled for others. For several weeks prior to December 12, 1956, he had not hauled anything for the corporation.

On the morning of December 12, 1956, plaintiff telephoned defendant D. W. Hale and asked if he had "anything to go." Hale told him that he had a load of frozen shrimp to be picked up in Tucson before 5 p.m. on December 13, part of which was to be delivered in Detroit and part in New York. Plaintiff agreed to take the load, indicating he wanted to go through Michigan as he wanted to pick up some parts for the transmission of his truck with which he had been having trouble. Late that afternoon plaintiff called D. W. Hale, stated he had been delayed working on his truck, and asked Hale to leave the shipping papers and an advance of $450 for him at a gasoline service station where he would pick them up that night, and told Hale he would leave in the morning. Hale left the shipping papers and two checks, one for $250 and one for $200, at the service station.

Plaintiff cashed the checks at the service station. Bank markings on the cancelled checks indicate the $250 check was charged against the account of Hale Distributing Company on December 13 and the $200 check on December 14. There was testimony that it was the custom in the trade for a trucker to ask for an advance of cash to defray the actual expense of a particular trip; that plaintiff understood the money advanced was to be used specifically for expenses which would arise while he was en route to his destination; that it was understood the money was advanced in reliance on his making the trip; and that he was not required to make an accounting of how he spent the money since the

amount advanced was to be deducted from the payment he received after the load had been delivered.

On the afternoon of December 14 D. W. Hale received a teletype message from Tucson stating plaintiff had not picked up the load. Hale was unable to find plaintiff, and later that afternoon he arranged for another trucker to haul the load. On December 15 Hale found plaintiff at his home where he and his son were working on the transmission of his truck. Hale saw that the truck carried a load of feed or grain. A heated argument ensued. Hale told plaintiff the load of shrimp at Tucson was being picked up by another trucker and demanded the return of the $450. Plaintiff refused to return it. There was conflicting testimony as to what was said.

Plaintiff testified he explained to Hale that his delay was caused by trouble with the truck transmission; he had driven to Bakersfield where he picked up the load of feed; he had planned to haul it direct from Bakersfield to Phoenix en route to Tucson; he had spent a night and part of a day in Bakersfield attempting to repair the transmission but could not find adequate parts; he had repaired it temporarily and returned to Los Angeles because he could more readily obtain the necessary parts there. He further testified he told Hale he wanted to pay him any moneys he owed him but that he wanted Hale to pay him what he had coming to him in sums that Hale had deducted from his payment for several prior loads, and he suggested they get together and settle their differences; that Hale threatened, ''You be in my office 10:00 o'clock Monday morning or else.''

Hale denied plaintiff's story and testified plaintiff told him he never intended to make the trip to Tucson; plaintiff told him he did not have the money; plaintiff complained because Hale had deducted $200 from his payment to plaintiff for a prior shipment of shrimp to Chicago which had partially defrosted; he did not complain of any other prior dealings; plaintiff promised to go to Hale's office on the following Monday and settle the matter; plaintiff did not appear.

Thereafter Hale telephoned his attorney and discussed the matter, recounting his conversation with plaintiff as testified to by him. On the advice of his attorney, Hale appeared on Monday, December 17, some time between 11 and 3 o'clock, at the Los Angeles Police Department where he discussed the matter with an officer who advised him to wait two days before taking any action. On December 19 Hale and the officer discussed the transaction with a deputy district at-

torney and appeared before the municipal court where Hale signed a complaint charging plaintiff with grand theft. Plaintiff was arrested and released on bail. An information was filed in the superior court charging plaintiff with grand theft. The case was tried before a jury in March 1957. The jury returned a verdict of not guilty. Plaintiff subsequently filed the present action.

The trial court in this action found: plaintiff went to Bakersfield without the consent of defendants and picked up a load of feed or grain; when Hale asked plaintiff about the load in Tucson, plaintiff stated he did not intend to pick up the load and he intended to keep the money; at that time plaintiff had already cashed both checks; plaintiff claimed the right to retain the money on the ground that Hale Distributing Company, Inc., owed him money as the result of prior dealings; Hale truly related the facts to his attorney, to a sergeant in the police department, and to a deputy district attorney; it is a custom of the trucking business for the trucking company to advance money to the driver expressly for the purpose of defraying the expenses of the trip; the funds were entrusted to plaintiff for a particular purpose, namely to defray the expenses of the trip; plaintiff wrongfully and without justification appropriated the funds to his own use; defendants honestly and reasonably believed plaintiff was guilty of a crime and were not actuated by malice; there was probable cause for defendants to believe plaintiff was guilty of a crime inasmuch as Hale saw plaintiff's truck carrying another load and plaintiff had cashed both checks when the usual method of cashing advance checks was to cash one at the start of the trip and another en route; plaintiff stated, possibly in anger, that he never intended to pick up the load, but if the statement was made in anger, nevertheless Hale honestly believed it; while plaintiff was the owner of the truck, inasmuch as he had leased it to defendant corporation, he was acting as the agent or employee of the corporation while acting in the capacity of driver of the vehicle; the testimony given by defendants at the preliminary hearing and at the time of the criminal trial was true.

Plaintiff urges reversal of the judgment on the grounds that defendants cannot rely on the defense of advice of counsel to show the existence of probable cause; that the facts shown by the evidence are insufficient to warrant an inference that defendant had probable cause to institute the criminal

action; that the court made findings contrary to the evidence on factual issues pertinent to the circumstances leading to plaintiff's prosecution from which the inference of probable cause was made; and that the court's finding of no malice on the part of defendants is not supported by the evidence.

In an action for malicious prosecution, the burden of proving the basic elements of the tort must be met by the one complaining that the criminal charge was unjustifiable.

In order that plaintiff recover damages, it was essential he prove three facts: (1) termination of the criminal proceedings in his favor; (2) want of probable cause for instituting the criminal proceedings; (3) malice on the part of defendants. (*Jaffe* v. *Stone*, 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775].)

"Probable cause is 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' [Citations.] The burden was on plaintiff to prove that a defendant did not have reasonable grounds for believing that the facts alleged in the complaint were true in order to recover compensatory damages against that defendant. [Citations.] Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It has reference to the common standard of human judgment and conduct. It exists if one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true. [Citations.] Proof of the favorable termination of the criminal proceeding does not create a conflict on the issue of probable cause. [Citation.] Proof that no crime was committed or that the accused is innocent does not negative the existence of probable cause." (*Centers* v. *Dollar Markets*, 99 Cal.App.2d 534, 540-541 [222 P.2d 136].)

The Restatement makes this statement, with which California cases are in accord:

"(1) The advice of an attorney at law admitted to practice and practicing in the state in which the proceedings are brought, whom the client has no reason to believe to be interested, is conclusive of the existence of probable cause for initiating criminal proceedings in reliance upon the advice if it is (a) sought in good faith, and (b) given after a full disclosure of the facts within the accuser's knowledge and information. . . . " (3 Rest., Torts, § 666.) Whether a full and fair disclosure of all of the facts was made to the

attorney is a question of fact. (*Miller* v. *Lee*, 66 Cal.App.2d 778, 784 [153 P.2d 190].)

▮▮ Plaintiff contends the finding that Hale truly related all of the facts to his counsel and the deputy district attorney is not supported by the evidence. He states that Hale did not tell his counsel that plaintiff had stated he wanted to pay what he owed Hale and at the same time he wanted Hale to pay what was owed to plaintiff, and that Hale did not tell his counsel that he had told plaintiff to be in his office to pay "Monday morning or else." Plaintiff testified to these statements; defendant denied them. The court found defendant's version to be true. Hale's testimony of what he related to his counsel was in accordance with his testimony regarding the circumstances, including the material fact that plaintiff claimed Hale had overcharged him on a prior claim.

▮▮ The finding that full and fair disclosure of all the facts was made to the deputy district attorney is supported by the testimony of the police officer who testified that he went with Hale to the district attorney's office and took with him the report, admitted in evidence in this action, which he had prepared when he interviewed Hale. The deputy district attorney examined the report and discussed the statements therein and interrogated Hale. The trial court was justified under the evidence in concluding that there was probable cause for defendant's charging plaintiff with grand theft.

▮▮ Plaintiff's contention is that the facts were insufficient to arouse in a prudent man a reasonable suspicion that plaintiff was guilty of embezzlement since he argues that the facts established merely a debtor-creditor relationship between himself and Hale. He urges that plaintiff was an independent contractor; that title to the money passed to plaintiff and thus under Penal Code, section 511, plaintiff could not have been guilty of embezzlement because that section provides it is a sufficient defense that property is appropriated openly and avowedly and under a claim of title preferred in good faith. He quotes this part of section 511: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable." He omits the last sentence which reads: "But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him."

The possession of property by one who has come into possession with the owner's consent, but for a particular purpose, or conditionally, does not constitute such an interest as to prevent his appropriation or conversion of the property from constituting theft, for the owner is not divested of title until the purpose is accomplished or the condition performed. (47 Cal.Jur.2d 346, § 11.) A conviction of grand theft was sustained by evidence that money was advanced to the accused for the purpose of a trip to Europe that he had no intention of taking. The fact that the money was advanced as a loan did not affect the accused's guilt. (*People* v. *Von Badenthal*, 8 Cal.App.2d 404 [48 P.2d 82].)

In *People* v. *Broes*, 138 Cal.App.2d 843 [292 P.2d 556], it was held that a debtor-creditor relation was not established between an investor and an accused where the investor advanced money to the accused only for the purpose of having it placed in escrow for use as part of the purchase price of property, the money to be returned to the investor if the purchase is not consummated. Neither is a debtor-creditor relation established by evidence that the money was advanced to plaintiff, as driver of the truck, only for trip expenses, although if the trip is completed, plaintiff, as owner-lessee of the truck, need not return the money but the amount advanced is deducted from the payment he has earned on completion of the trip. The court found on substantial evidence that the money was transferred to plaintiff for the sole purpose of paying traveling expenses while he served as driver of the leased truck.

In 1927 the Legislature amended Penal Code, section 484, to make one family of larceny, embezzlement, fraudulent appropriation, and false pretenses under the generic name of theft. (*People* v. *Otterman*, 154 Cal.App.2d 193, 205 [316 P.2d 85].) It would appear that the ordinarily prudent man would be justified in determining from the information known to Hale that plaintiff's act and intent constituted one of the crimes included in the charge without the requirement that he make a decision of the fine and close legal questions as to the exact legal relationship established by their agreement and conduct, as to which party had legal title to the money advanced, and as to the time plaintiff may have formed the intent to retain the money.

The generally accepted view is that probable cause does not depend on the actual state of the case in point of fact but on the honest and reasonable belief of the party com-

mencing the prosecution, and that the reasonable and probable cause must appear to have existed in the party's mind at the time of his proceedings. The actual guilt or innocence of plaintiff is not the controlling factor for it is only necessary that Hale meet the standard of conduct of the ordinarily prudent man in believing plaintiff guilty of one of the forms of grand theft. ▆▆▆ Where from the circumstances it appeared to Hale that he advanced the funds to plaintiff on plaintiff's representation he would make the trip, that the money was to be used solely for expenses en route, that plaintiff acted in bad faith and without an honest intention of making the trip, that plaintiff refused to return the money, that plaintiff's claimed offset was in the amount of only $200, that plaintiff had not made a prior claim to him for that or any other amount, and that plaintiff had not hauled anything for defendants for several weeks, the court was warranted in concluding that the information possessed by Hale was sufficient to cause a reasonable person to entertain an honest and strong suspicion that plaintiff was guilty of one of the offenses comprised in the charge of grand theft.

▆▆▆ Plaintiff's further contention that there was malice shown on the part of Hale requires no discussion in view of our conclusion that plaintiff failed to carry the burden of showing want of probable cause. In any event, it was a question of fact which the court determined adversely to plaintiff. There is no evidence of acts or statements of Hale indicating that he was impelled to the action he took against plaintiff by improper motive, or that his action was taken wilfully and purposely to prejudice and injure plaintiff. Since plaintiff failed to show lack of probable cause, no inference of malice on the part of defendant may be drawn. (*Garfield* v. *Peoples Finance & Thrift Co.*, 24 Cal.App.2d 144, 148 [74 P.2d 1061].)

▆▆▆ Plaintiff complains of the finding to the effect that plaintiff wrongfully and without justification appropriated the funds to his own use and the conclusion that plaintiff was actually guilty of the crime of embezzlement. Prosser answers this point:

"A further limitation upon the action of malicious prosecution is that it is always open to the defendant to show that the plaintiff was in fact guilty of the offense with which he was charged. This defense, which is closely analogous to that of truth in actions for defamation, is supported by a similar policy in favor of encouraging exposure of the guilty. As

in defamation, the burden of proof of the issue is upon the defendant, and the guilt proved must be substantially equivalent to the charge made. The defense is available notwithstanding an acquittal in the criminal proceeding, and the question of guilt may be retried in the malicious prosecution action. The reason for this is that a verdict of not guilty does not necessarily establish innocence, but merely a failure of the prosecution to prove guilt beyond a reasonable doubt; and in the subsequent civil action, where all that is required is a preponderance of the evidence on the issue, a further inquiry may be made before a new jury as to whether the lesser burden of proof can be sustained. Thus, while an unreversed conviction is conclusive as to guilt and bars malicious prosecution, an acquittal is not conclusive as to the plaintiff's innocence.'' (Prosser on Torts, 2d ed., 651, § 98.)

The findings are supported by the evidence. ▬▬ The evidence was such that findings in plaintiff's favor would have been supported. But as a reviewing court we cannot hold unsupported the findings of the trial judge merely because we might reasonably draw inferences different from those he drew or might feel that the preponderance of the evidence was in plaintiff's favor.

Affirmed.

SHINN, P. J.—I concur in the judgment upon the sole ground that the finding of probable cause for the prosecution is supported by the evidence that defendants acted under the advice of counsel.

A petition for a rehearing was denied January 6, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1960.