[Civ. No. 25990. Second Dist., Div. One. May 4, 1962.]

IRVING KLOTZ, Plaintiff and Respondent, v. NICHOLAS ALEXANDER, Defendant and Appellant.

Miller, Vandergrift, Middleton & Sackin and Thomas J. Middleton for Defendant and Appellant.

S. Ernest Beuchel for Plaintiff and Respondent.

LILLIE, J.—Defendant appeals from an adverse judgment on a jury's verdict in an action for malicious prosecution of a criminal proceeding, said latter proceeding having terminated in a dismissal of the charges after presentation of the People's case. Previously, upon motion for new trial and consistent with a condition imposed by the court, plaintiff consented to a reduction of the judgment to the sum of $10,000; the motion for new trial was thereupon denied.

The bizarre events in which the criminal prosecution had its genesis are of such a nature that we relate only those details which will furnish the general background of the instant litigation; necessarily they and other material matters are viewed in the light most favorable to plaintiff-respondent. In 1956 plaintiff was employed by defendant as a branch store manager in the latter's vacuum cleaner business; in that capacity he was obliged to make frequent calls at defendant's main store for supplies. One evening in the summer of 1958 he made such a call, requesting certain articles from Jerry Kahan, one of defendant's employees. According to plaintiff, Kahan said to him: "Oh, don't bother me." Such statement was immediately followed by an obscene suggestion which resulted in a $10 wager and certain lewd acts performed by plaintiff in the rear of the store, after which he told Kahan the latter owed him $10. Present were Jerry Kahan, Kahan's brother and one Graf; also in the store were defendant and his partner, David Barer.

Immediately after the incident plaintiff went to the front

of the store; in the presence of the defendant and all of the persons above named, plaintiff again stated that Kahan owed him $10.

Within a short time thereafter plaintiff voluntarily left defendant's employ—they are said to have parted amicably, although plaintiff admitted that he subsequently "pestered" Jerry Kahan on numerous occasions for payment of the wager. On August 6, 1958, or thereabouts, plaintiff filed a claim with the Labor Commissioner for wages assertedly due him; while a hearing was had, no decision (one way or the other) was apparently ever reached. Plaintiff also applied for unemployment insurance; his application was not approved by defendant, but plaintiff in due time received all the benefits to which he was entitled.

On or about September 18, 1958, defendant went to the Wilshire police station; eventually he was referred to one Fusilier, a detective assigned to the vice detail. He told Fusilier about the events in the back room of his store, and Fusilier thereafter interviewed the Kahan brothers at the scene of the incident. A crime report was prepared and signed by Fusilier, the defendant and the Kahans. After preparing the report, Fusilier phoned the chief complaint deputy in the city attorney's office, related the facts to him and was told to forward the report for further action. The report eventually reached Deputy City Attorney John Concannon; following routine procedure, Concannon set the case down for hearing and instructed both sides by letter to be present in order that he might determine whether to issue a complaint. On September 30, the scheduled date, the defendant, Barer (his partner) and the Kahan brothers appeared in Concannon's office; plaintiff did not appear. Concannon questioned those present at some length and then discussed the case with his immediate superior. Later that day a complaint, sworn to by defendant, issued; it charged plaintiff with indecent exposure (Pen. Code, § 331) and "lewd and dissolute" conduct (Pen. Code, § 647). After two days of trial to a jury, the court of its own motion dismissed the complaint. Approximately two months later (February 3, 1959) the present action was commenced.

Having denied in his answer the necessary averments in plaintiff's complaint that he acted with malice and without probable cause, and having affirmatively alleged (as a separate defense) that he relied in good faith on the advice of a

duly qualified prosecuting officer of the City of Los Angeles,[1] defendant now contends that the trial judge "was guilty of error or abused his discretion" in denying the motion for nonsuit based upon plaintiff's failure to sustain the burden of proof with respect to such essentials (malice and want of probable cause).

The burden of proving the basic elements of the tort must be met by one complaining that the criminal charge was unjustifiable. (*Clary* v. *Hale,* 175 Cal.App.2d 880, 886 [1 Cal.Rptr. 91].) Here it was necessary for plaintiff to prove the following facts: (1) termination of the criminal proceedings in his favor; (2) want of probable cause for instituting such proceedings; and (3) malice on defendant's part. (*Jaffe* v. *Stone,* 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775].) Since defendant in his answer has admitted (1) above, we are only concerned with (2) and (3).

Citing the early (and leading case) of *Ball* v. *Rawles,* 93 Cal. 222 [28 P. 937, 27 Am.St.Rep. 174], as well as later cases in accord, appellant argues that there was no dispute concerning the existence of the facts relied on to establish want of probable cause; therefore, he concludes, the trial court should have determined as a matter of law whether such facts warranted an inference of want of probable cause. In the *Ball* case, *supra,* however, the court had these additional observations to make concerning the determination of the question of probable cause: "While it is not necessary to show that the crime has in fact been committed, it is necessary to show, not only that the defendant had reasonable ground to believe, but that he did in fact believe, that the crime had been committed, and that the plaintiff had committed the crime. Although the question of probable cause, as we have seen above, is a question of law, yet the belief of the defendant in a state of facts is itself a fact which it is proper to submit to the jury for its consideration; and when-

---

[1]Said separate defense reads: "The defendant acted in good faith, and before aiding in the procuring of the arrest of plaintiff, he stated all the facts and circumstances connected with the transaction fully, fairly, and truthfully to a representative of the police department and a Deputy City Attorney of the City of Los Angeles and after such statement said Deputy City Attorney advised this defendant that the plaintiff was guilty of the crimes set forth in Paragraph II of the complaint on file herein; that this defendant having full faith in and acting upon the advice of said Deputy City Attorney that plaintiff was guilty of said crime did cooperate with said Deputy City Attorney and sign a document in connection with the issuance of said complaint and did testify at plaintiff's trial."

ever the *good faith* of the defendant, or his knowledge or belief in an existing state of facts, is an element in determining whether there was probable cause, the court should submit that question to the jury, as well as the other facts which, in its opinion, bear upon that issue.'' (P. 234.) (Italics added.)

 ''Good faith is an independent element of probable cause in malicious prosecution cases, and an actual and honest belief in the guilt of the plaintiff is obviously an integral part of good faith.'' (32 Cal.Jur.2d, Malicious Prosecution, § 23.)

 There was evidence that the police department was not contacted until mid-September although the criminal complaint alleges that the offense was committed on or about July 10; meantime, plaintiff remained in appellant's employ (although for a brief period) and was admittedly a guest in appellant's home on at least one occasion. Appellant also admitted, when his deposition was taken, that, ''It had never occurred to me that a crime was committed. It only occurred to me that the man did a ridiculous thing that he just shouldn't do any more.'' It was for the jury to determine from the foregoing circumstances, taken collectively, whether ''an actual and honest belief in the guilt of the plaintiff'' was entertained by appellant. The adverse inference, implicit in the verdict reached, is substantially supported.

 Appellant's good faith in soliciting the advice of a duly qualified deputy city attorney was also material to the affirmative defense (setting forth such matters) because it is the law that when a defendant in a malicious prosecution action seeks such advice ''and makes a full and fair statement of all material facts with respect to an alleged criminal charge, and *in good faith*, accepts the advice of counsel that he has a meritorious cause, it must be presumed he has 'made out a complete defense to the action.' [Citation.]'' (*Walker* v. *Jensen*, 95 Cal.App.2d 269, 274 [212 P.2d 569].) As further pointed out in the case just cited, ''the advice of counsel must be sought *in good faith* and not as a mere cloak to protect one against a suit for malicious prosecution or to refute the theory of malice. [Citation.] It follows that when the advice of counsel is not sought in good faith, it affords no defense to a suit for malicious prosecution, particularly when material facts have been omitted from the statement made to counsel.'' (P. 274.)

 Portions of the testimony of various witnesses are quoted at length in appellant's opening brief—he has not

filed a reply brief. Emphasized is part of Fusilier's testimony which, according to appellant, establishes the claim that he gave the officer "the whole story": "Well, he mentioned to me about the Labor Commission, for instance, that Mr. Klotz had gone up there and he mentioned that he was smart, he said smart so and so,[2] and he got more, shall we say confidential as we went along, and I got the whole story, everything that happened, and then I later took this application for a complaint." Omitted from appellant's brief, however, is other testimony (on the part of Fusilier) which negatives the claim that *counsel*, as distinguished from Fusilier, was furnished all the facts. It appears that Fusilier, following his taking of the application for a complaint, telephoned Deputy City Attorney Thomas, Concannon's superior, regarding the matter. Asked whether he gave Thomas "the benefit of your information as to the possibility that this was a private quarrel and that Mr. Alexander might be motivated for selfish reasons in that he discussed the matter of the Labor Commission and things like that, did you include that in your report?" Fusilier answered: "No, not in the typewritten, but I called him up on the telephone." Later, while Fusilier was still on the stand, the following occurred: "Q. Now, still then at no time, at any time, either verbally or in writing, did you notify the City Attorney that you had some reservations about this, that there was a possibility that this was a private feud and there might be some agitation on Mr. Alexander's part to get even about this Labor Commission thing, and at no time did you impart any of that information to the City Attorney? A. That's correct. At no time did I impart that information to the City Attorney. Q. Either to Mr. Thomas or anybody else? A. That's correct. I, at no time, imparted that information. Q. You didn't see fit to attend the hearing that was held in Mr. Concannon's office? A. That's correct."

Subpoenaed by the appellant, Concannon testified that he had no "independent recollection" of the case—relying on an "interview sheet" which was prepared at the time of appellant's appearance in his office. He was further questioned as follows: "Q. Did you receive any information from any source other than the crime report that you have before you, before you prepared and issued that complaint? A. I don't have any record or notation to that effect. Q. You have no

---

[2]Earlier, according to Fusilier, appellant said of plaintiff: "That son of a bitch, I'll get him."

present recollection of having received any other information? A. I don't have any recollection at the present time, no."

█ Although, as noted above, the burden of proving want of probable cause rested with the plaintiff, the burden of establishing reliance upon the advice of counsel was upon defendant-appellant. (*Albertson* v. *Raboff*, 185 Cal.App.2d 372, 386 [8 Cal.Rptr. 398]; *Diggs* v. *Arnold Bros., Inc.*, 132 Cal.App. 518, 523 [23 P.2d 71].) █ Advice of counsel can only be shown by proving the facts that were stated by a defendant to counsel (*Singleton* v. *Singleton*, 68 Cal.App.2d 681, 695 [157 P.2d 886]) and not by what was disclosed by him to a police officer. (*Centers* v. *Dollar Markets*, 99 Cal.App.2d 534, 545 [222 P.2d 136].) █ Fusilier's testimony gives the impression that he considered appellant's complaint not to have been wholly uninspired by animosity or malice; he also stated that he "wasn't sure this crime had actually taken place," adding, "That is why I had the hearing rather than proceed by warrant, had the hearing in the City Attorney's Office and leave it to his discretion whether or not he would get a warrant." If Thomas or Concannon had been informed of the entire background of this controversy, one or both might have concluded that appellant was not in good faith and was simply using the episode in question as a means of retaliation for the asserted annoyance plaintiff had caused him in collateral matters which affected the operation of his business.

█ "Where the evidence is in conflict or subject to different inferences as to whether there was a full, fair and complete disclosure to the attorney of all of the facts of the case within the knowledge of the client or as to whether the client acted in good faith on the advice of the attorney, it is for the trier of the fact to resolve such conflict or draw the credible inferences." (*Albertson* v. *Raboff*, *supra*, 185 Cal. App.2d 372, 386.) █ As in the case of want of probable cause, the evidence at bar sufficiently supports the adverse inference drawn by the jury that the disclosure was neither full nor fair nor made in good faith.

With respect to the element of malice, Fusilier testified (as pointed out already) that appellant stated he was going to "get" the plaintiff, referring to the latter as a "son of a bitch." Similar threats and epithets were used in *Siffert* v. *McDowell*, 103 Cal.App.2d 373, 377 [229 P.2d 388], which prompted this court to conclude: "In such a situation it was certainly a jury function to determine whether the elements

of malicious prosecution had been established." ▋ In *Burke* v. *Watts*, 188 Cal. 118, 126 [204 P. 578], it was further declared (quoting from an earlier case) that the existence of malice may be " 'inferred by the jury from want of probable cause for the prosecution, or from acts or declarations of the defendant expressing or indicating prejudice, ill will, or malicious motive in the matter of the prosecution.' " There is no merit to appellant's claim as to this phase of the instant proceeding.

▋ Next, it is contended that plaintiff failed to prove any damages beyond the cost of his defense of the criminal action; in this general connection appellant argues that the award of $25,000 by the jury, reduced to $10,000 by the trial court, was so "fantastically excessive" that it was "obviously given under the influence of passion and prejudice"—appellant does not, however, expressly challenge the reduced amount consented to by plaintiff. The attorney for plaintiff was paid $800 to defend him in the criminal proceeding, the reasonableness of which sum is not questioned; a further expenditure of $100 was also proved and likewise is not challenged. We cannot say that the amount remaining, $9,100, is excessive as a matter of law, particularly since, "It is the province of the jury and then of the trial court upon motion for new trial, to determine and fix the amount of damages awarded a litigant." (*Green* v. *Stewart,* 106 Cal.App. 518, 531-532 [289 P. 940].) It is settled that damages for malicious prosecution may include " 'loss of time, deprivation of liberty, . . . injury to fame, reputation, character, . . . mental suffering. . . .' " (*Ray Wong* v. *Earl C. Anthony, Inc.,* 199 Cal. 15, 18 [247 P. 894].) There was evidence of mental suffering, mortification and humiliation—plaintiff, after all, stood trial for two days before a jury. We repeat that appellant has not expressly challenged the reduced amount fixed by the trial court.

▋ Another assignment of error concerns the admission of expert testimony, over objection, that plaintiff could not have performed the act for which he demanded payment of the wager agreed upon. Although the error is said to be prejudicial, it appears that appellant's counsel undertook to cross-examine the witness at considerable length; under the circumstances, we are of the view that no prejudice appears.

▋ Finally, appellant complains of the giving of an instruction relating to probable cause and malice which assertedly "told the jury to bring in a verdict for the respond-

ent, Klotz.'' The instruction is not open to such criticism when read with other instructions; furthermore, appellant is in no position to complain since the record does not reveal the source of any of the instructions—whether given at plaintiff's request, at his (appellant's) request, or on the court's own motion. (*Rodriguez* v. *City of Los Angeles,* 171 Cal.App.2d 761, 768 [341 P.2d 410].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 27, 1962.