[Civ. No. 523. Fifth Dist. Mar. 15, 1966.]

ROBERT C. WEBER, Plaintiff and Respondent, v. RICHARD LEUSCHNER et al., Defendants and Appellants.

832

Parichan, Krebs & Levy, R. W. Levy, William T. Ivey, Jr., and Mary C. Fisher for Defendants and Appellants.

Sherwood Green and Denslow Green for Plaintiff and Respondent.

STONE, J.—These appeals are from a judgment for compensatory damages in the sum of $15,000 against all defendants and $7,500 exemplary damages against defendant Leuschner, in a malicious prosecution action. The verdict awarded $25,000 compensatory damages but upon motion for a new trial, the court ordered a new trial unless plaintiff remitted $10,000 compensatory damages, leaving intact the verdict of $7,500 exemplary damages. Plaintiff filed such a remission, and defendant Leuschner appeals from the judgment against him for both compensatory and exemplary damages, and all other defendants appeal from the judgment against them for compensatory damages.

Viewing the facts in the light most favorable to respondent, as we must (*Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200]), the record reflects that:

During 1961 and 1962, C. Ray Robinson & Associates, a partnership, conducted a fruit storage business in Fresno under the fictitious name "Central Empire Storage." Robinson had a general power of attorney from defendants Black and Myers. Defendant Leuschner was manager and although employed under a contract specifying that he was an independent agent, he directed and supervised the collection of storage fees which were forwarded to C. Ray Robinson & Associates in Merced. Mr. Mash, a law associate of C. Ray Robinson, was designated by Robinson to take care of Central's problems regarding collections and to conduct litigation if necessary.

In August 1962 plaintiff, a rancher, made arrangements with defendant Leuschner to precool and store his peaches at Central Empire Storage before they were shipped to market. Storage charges were payable as the peaches were shipped, and on August 12, 1962, plaintiff paid Central $255.92 in storage charges for the release of a shipment. About August 20 or 21, plaintiff's broker informed him that some of the peaches appeared shriveled and discolored. Plaintiff contacted Leuschner; they both investigated and discovered the peaches were in poor shape, apparently because of improper temperature controls in the storage building.

On August 21, 1962, Leuschner wrote a letter to plaintiff concerning the poor condition of the peaches, recommending that they be shipped immediately.

On August 27, 1962, plaintiff's broker arranged for shipment of a load of peaches, but Leuschner instructed his em-

ployees not to release any peaches unless all accrued storage charges were paid in full. On the same day plaintiff signed and delivered a check drawn on Bank of America, Madera Branch, to Central Empire Storage in the amount of $594.86. On that date there was a balance of $598.84 in plaintiff's bank account. In addition, plaintiff had $6,000 remaining of a $50,000 line of credit with the same bank to cover expenses of processing his peach crop.

On the morning of August 28, plaintiff called Leuschner regarding fruit damage and damage to his truck caused by Central's forklift. Plaintiff asked Leuschner the name of his insurance company and about possible remuneration. Leuschner's reply was: "None of your damn business." Weber became angry, and stopped payment on the check by an order dated August 28, 1962, at 10 a.m. The order carried a notation that payment was stopped because the amount involved was "disputed."

On August 30 the check was rejected by the bank, and stamped in five places with the large words "Payment Stopped." Through inadvertence at the bank, one additional stamp indicated in small print, "Not Sufficient Funds." The "Return Item Advice Letter," which was stapled to the check when returned to Robinson, indicated "Payment Stopped." Leuschner, who received the check from the Robinson office about September 4, had been in business for many years and knew the meaning of a "Payment Stopped" stamp. He telephoned plaintiff and asked why payment had been stopped. Plaintiff replied it was because of the fruit damage and the manner in which Leuschner talked to him on August 28 about fruit damage and damage to his truck. Leuschner threatened to have plaintiff arrested, and accused plaintiff of attempting to defraud him.

Plaintiff never told Leuschner that he had a line of credit established at the bank, and he did not notify him that payment had been stopped on the check until Leuschner called. He testified that he gave the check in good faith on August 27.

Leuschner talked to Attorney Mash regarding the check, informing him that the check was returned for insufficient funds but not that there was a dispute regarding damaged fruit. Leuschner told Mash that plaintiff gave him the bad check just to get the fruit out of the warehouse. Mash did not advise Leuschner to swear out a complaint.

Thereafter Leuschner went to see Fresno County District Attorney Clarke Savory regarding the check, taking a signed complaint with him. He told Savory that from all appearances plaintiff was bankrupt. Leuschner testified he told Savory of the conflict over the damaged fruit, but Savory did not support this testimony. When Savory discovered that Leuschner was working for C. Ray Robinson & Associates, he asked him why he did not bring a civil action or exercise a lien against the fruit. Leuschner replied that the lien was not sufficient. Savory advised him to contact Robinson's office to determine if they wanted a complaint filed.

On September 6, Leuschner again talked to Savory, saying that he had conferred with his "legal firm up there." At Leuschner's request Savory prepared a complaint accusing plaintiff of the felony of uttering and delivering a check without sufficient funds, and Leuschner signed it.

On Friday, September 7, plaintiff was told that no further fruit would be shipped until Central received a cashier's check for the balance of his storage charges. He secured a cashier's check that day and tried, without success, to present it to Central on Saturday. He left the check with his broker.

On Monday, the 10th, plaintiff heard a radio broadcast that a criminal complaint had been signed accusing him of the felony of uttering a check without funds. On the 12th, plaintiff was contacted by the sheriff regarding a warrant for his arrest, and plaintiff, in turn, contacted Denslow Green, his attorney. Green called Leuschner and told him the check was good, and asked him to drop his complaint, but Leuschner said he had no authority to do so. On the 17th, plaintiff was arrested and shortly thereafter released on bail.

At a preliminary hearing October 22, the complaint was dismissed for lack of probable cause.

Plaintiff sustained $500 special damages paid to attorney Green for his handling of the criminal proceedings. In addition, he testified that he suffered mental anguish and embarrassment. Plaintiff was serving as a member of the school board, president of the local Farm Bureau, and a member of the evangelism committee of his church. He testified that in conjunction with all of his work, especially the evangelism committee and school board proceedings regarding the dismissal of a teacher, he suffered great mental anguish because of the felony complaint. He discussed with friends and associates how he should proceed with his affairs in the light of the

complaint. They testified that he was troubled by the broadcast. Mrs. McCollister, Farm Bureau secretary, related the substance of several telephone calls from members who, after hearing the radio broadcast reporting the felony complaint, questioned the election of Weber as their president. However, plaintiff was not removed from any position which he held, nor did any of his close friends, as far as he knew, disassociate from him.

The necessary elements of an action for malicious prosecution are summarized in the oft-quoted case, *Jaffe* v. *Stone*, 18 Cal.2d 146, at page 149 [114 P.2d 335, 135 A.L.R. 775], to wit: (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. Element No. 1 is conceded, but defendants allege insufficient evidence to support the jury verdict as to probable cause and malice.

Looking, first, at the element "probable cause," the authorities approve the definition: " 'There must be such a state of facts . . . as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty.' " (*People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]. See also *Centers* v. *Dollar Markets*, 99 Cal.App.2d 534, 540 [222 P.2d 132] ; *Grove* v. *Purity Stores, Ltd.*, 153 Cal.App.2d 234, 240 [314 P.2d 543].)

Since it is not a crime to stop payment on a check, the basic determination the jury had to make was whether Leuschner believed that plaintiff did not have sufficient funds in his account at the time he delivered the check. It was stamped "Payment Stopped" in five places, and in one place, "Not Sufficient Funds." However, there was an advice letter attached to the check reflecting that payment had been stopped. Furthermore, before Leuschner signed the criminal complaint and before he talked with the district attorney, he called plaintiff, who told him he had stopped payment because of the controversy over fruit damage. Leuschner thus had notice of some reason other than "insufficient funds." Had he inquired at the bank, he would have learned of Weber's solvency, particularly that $6,000 was available from a $50,000 line of credit to cover Weber's checks.

Malice, the third necessary element under the rule laid down in *Jaffe* v. *Stone, supra,* may be inferred from the want of probable cause. (*Singleton* v. *Singleton*, 68 Cal.App.2d 681, 696 [157 P.2d 886] ; *Grove* v. *Purity Stores, Ltd., supra; Fry*

v. *Bank of America,* 142 Cal.App.2d 150, 158 [298 P.2d 34].)

Evidence of Leuschner's lack of good faith from which the jury could have inferred malice, was his failure to state all of the facts to his attorney or to the district attorney, and his misstatement to the district attorney concerning plaintiff's apparent bankruptcy. Also, Leuschner accused plaintiff of committing fraud, and threatened to have him arrested.

A plaintiff is not required to prove that the prosecution was inspired by personal hostility, a grudge, or ill will; it is sufficient if it appears that the criminal action was instituted in bad faith to vex, annoy or wrong the adverse party. (*Centers* v. *Dollar Markets, supra,* at p. 541; *Singleton* v. *Singleton, supra; Hudson* v. *Zumwalt,* 64 Cal.App.2d 866, 872 [149 P.2d 457].)

The question of malice, like probable cause, presents an issue of fact to be determined in the trial court, and it may be proved by direct evidence or it may be inferred from all the circumstances in the case. (*Grove* v. *Purity Stores, Ltd., supra,* at p. 241; *Centers* v. *Dollar Markets, supra,* at p. 542.)

Defendants cite evidence supporting their position that defendant Leuschner had reasonable cause to believe plaintiff had committed a criminal act, and that Leuschner acted without malice. Further, they cite evidence that would support an inference that plaintiff brought on his own troubles by not telling Leuschner of his line of credit with the bank. It is well established, however, that a reviewing court cannot reweigh the evidence; it is sufficient if the verdict is supported by substantial evidence. (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].) Perhaps more important in this case is the rule that requires us to indulge all inferences or deductions from the evidence most favorably in support of the jury's verdict. (*Florez* v. *Groom Development Co., supra; Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].) When we view the evidence in this light, it amply supports the verdict.

Leuschner raised the affirmative defense that he acted in reliance on the advice of counsel. This defense is available only if a defendant discloses all pertinent and material facts within his knowledge to the attorney. (*Portman* v. *Keegan,* 31 Cal.App.2d 30, 36 [87 P.2d 400]; *Clary* v. *Hale,* 175 Cal.App.2d 880, 886 [1 Cal.Rptr. 91].) Leuschner failed to tell Mash of the fruit controversy. He not only failed to inform the district attorney that he had called plaintiff and

was told by him that payment was stopped because of the controversy over spoiled fruit, but Leuschner made statements to the district attorney that were contrary to fact, namely, that from all appearances plaintiff was bankrupt and passed the check to get his fruit released from cold storage. The bankruptcy statement was completely irresponsible as plaintiff, in addition to his letter of credit at the bank, owned 80 acres of real property, 40 acres improved with vineyard and 40 acres improved with fruit trees.

District Attorney Savory testified: "I says, 'Have you conferred with your legal firm up there?'

"He says, 'Yes, I conferred, and they said "By all means, sign a Complaint," that this was a matter of principle and he owed the money,' and for him to sign a Criminal Complaint against the defendant, so he had the check, "Insufficient Funds"—stamped "Insufficient Funds" and "Stop Payment" both, so I said, 'Okay, if you want it, here it is.'"

Whether a full and fair disclosure of all the facts was made to the district attorney and to attorney Mash is a question of fact, as is the question whether Leuschner acted on the advice of counsel. The evidence discussed above is sufficient to support the jury's finding of fact adverse to defendants on this issue. (*Clary* v. *Hale, supra*; *Singleton* v. *Singleton, supra*; *Albertson* v. *Raboff*, 185 Cal.App.2d 372, 386 [8 Cal. Rptr. 398].) Furthermore, the jury might well have concluded that Leuschner, with the information he had, did not believe plaintiff was guilty of issuing a check without sufficient funds, regardless of legal advice, and if so they were justified in finding against him on the defense that he acted upon the advice of counsel. (*Singleton* v. *Singleton, supra*, at p. 695.)

Defendants C. Ray Robinson & Associates contend that Leuschner was an independent contractor and that they were not responsible for his conduct in the malicious prosecution action. In their brief they set out the terms and conditions under which Leuschner managed or operated the vineyards, wineries, packing houses and cold storage plant of the Associates. But we are not here concerned with plant management as such, rather the critical question is whether Leuschner was acting as agent for the Associates in collecting fees for the operation of the business, and whether the Robinson group ratified Leuschner's actions in this particular instance. In this connection, Mr. Robinson testified: "Q. So that as far as the partnership is concerned, you are the person who makes the

decisions as far as the operation of Central Empire Storage? A. I don't know what you mean by 'operation.' So far as policy decisions are concerned, why I make the decisions. Insofar as the handling of finances and things of that kind, I make the decisions. But I don't make any decisions with reference to the physical operation of the plant itself.

" . . . . . . . . . . . . .

"Q. As far as the financial operations of the plant, that is, for the collection of storage fees and for processing fruit, and so on, who handled that? A. Well, it would be under his direction and supervision. I don't know whether he personally did that or whether he didn't, and if it got to a litigation phase where I think one or two of the accounts did, why Mr. Mash handled those.

Q. Mr. Mash was in your office at that time? A. That's right.

Q. When I say 'in your office,' I mean in your legal office. A. Yes.

Q. And was acting as your associate at that time in the practice of law? A. In the practice of law, yes."

The record reflects that Leuschner contacted Mash regarding the check, and Mash told him to take it up with the district attorney. Further, Leuschner testified that in his operation of the plant if there was a legal dispute about a collection, or if he had to take legal steps to collect money, he turned such matters over to Mash, who was Robinson's associate designated to handle such matters.

There is also testimony of District Attorney Savory that he advised Leuschner to confer with Robinson's office prior to signing the complaint, and that Leuschner, upon his return, told Savory they said, "By all means, sign a Complaint."

The foregoing constitutes evidence sufficient to justify the jury's finding that whether or not Leuschner was an independent contractor insofar as operation of the plant was concerned, in this particular transaction C. Ray Robinson & Associates ratified Leuschner's acts and became liable for compensatory damages, but not for exemplary damages. (See *Shoopman* v. *Pacific Greyhound Lines,* 169 Cal.App.2d 848 [338 P.2d 3].)

 Defendants contend the court erred in sustaining an objection to Leuschner's attempt to relate statements made by District Attorney Savory. On direct examination, Leuschner's counsel questioned him concerning his conversation with the

district attorney. The trial court permitted Leuschner to testify as to what he said, but sustained an objection to the replies of the district attorney upon the grounds the testimony would be hearsay, self-serving, and not the best evidence. We agree with defendants that the court erred on all three points. The best evidence rule clearly does not apply since no document or writing was involved. (Code Civ. Proc., §§ 1855, 1937.) A self-serving declaration, of course, is an extrajudicial statement made by a person for his own benefit or in his own interests. Since Leuschner was permitted to testify in full as to his extrajudicial statements made to the district attorney, the self-serving declaration rule was inapplicable.

At first glance it would appear that for Leuschner to relate the statements made by the district attorney in the course of their conversation, would be to repeat hearsay. However, the statements were offered in evidence as part of Leuschner's defense that he relied upon the advice of the district attorney. The statements were not offered to prove the truth of their content, but to show that the statements were made and that Leuschner was justified in relying upon them. Witkin on California Evidence (1958) sections 205 and 215, pages 232 and 240, discusses the general principle involved and points out that testimony of this character is not hearsay. In *People* v. *Henry,* 86 Cal.App.2d 785, the court said, at page 789 [195 P.2d 478] : ''There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence.''

There was no prejudicial error, however, since counsel for C. Ray Robinson & Associates called the district attorney, who testified fully as to his conversation with Leuschner. It must be presumed that all defendants were satisfied the district attorney correctly related the conversations, as no foundation for impeachment was laid and he was not cross-examined by counsel for Leuschner. Therefore the error in not permitting Leuschner to relate the complete conversation was cured by the district attorney's testimony. Certainly in light of article VI, section 4½, of the California Constitution, the ruling is not ground for reversing the judgment.

 Defendants allege the court erred in permitting the secretary of the Farm Bureau to relate the telephone calls she received after news of the issuance of the criminal complaint

against Weber was carried on a local radio broadcast. Defendants contend that since these telephone calls were received from third persons, the evidence was hearsay, and inadmissible. The testimony was offered, not to prove the truth of the contents of the statements, but to prove that Farm Bureau members had called the secretary following the broadcast. We have pointed out the reasons why it was error for the court to sustain an objection to Leuschner's testifying to the statements of District Attorney Savory. The same reasoning applies here, conversely, and demonstrates the admissibility of the conversations related by Mrs. McCollister. (*People* v. *Henry, supra;* Witkin, Cal. Evidence (1958) *supra.*)

Defendants C. Ray Robinson & Associates contend the court's instructions on the issues of agency, when considered with the instructions distinguishing compensatory from exemplary damages, are confusing. However, the court properly instructed the jury: "If you find that at the time of the incident involved in this case defendant, RICHARD LEUSCHNER, was an independent contractor, whatever your verdict may be as to him, your verdict must be in favor of the other defendants, C. RAY ROBINSON, WILLIAM H. BLACK, JOHN W. MYERS, C. RAY ROBINSON & ASSOCIATES and CENTRAL EMPIRE STORAGE, unless you find that the act or acts of said Richard Leuschner were authorized or later ratified by said defendants as their acts."

This instruction contained an explanation of the distinction between compensatory damages and exemplary or punitive damages, and concluded by advising the jury: "In view of the fact that exemplary and punitive damages are awarded as punishment they can only be awarded against such defendants who either participated in or ratified the wrongful act. Therefore, exemplary or punitive damages shall not be awarded against the defendants Robinson, Black and Myers."

The instructions correctly state the rule that a principal is liable for compensatory damages for the authorized or ratified acts of an agent, but that a principal is not liable for exemplary damages unless the wrongful act was directed by the principal or ratified with full knowledge of the facts. (*Deevy* v. *Tassi,* 21 Cal.2d 109 [130 P.2d 389].) Here, there was evidence that C. Ray Robinson & Associates authorized or ratified the act, but not evidence that they knew all the facts.

It is quite evident the jurors were not confused or misled, since they brought in a judgment for compensatory damages

against all defendants but limited their verdict for exemplary damages to defendant Leuschner. We do not see how Robinson & Associates were prejudiced by the instructions.

With regard to the defense of advice of counsel, defendant Leuschner complains the court instructed the jury that he had the duty to disclose not only all the facts known to him but also the facts he should have known or which were known to his agents. The language used in the instruction was apparently taken from *Baker* v. *Gawthorne*, 82 Cal.App.2d 496, wherein the court said, at page 500 [186 P.2d 981]: "Before a person accuses another in a judicial proceeding of having committed an unlawful, a base or immoral act, it is his duty not only to make a full and fair disclosure of 'all the facts within his knowledge tending to prove or disprove the criminal charge,' but it is also incumbent upon him to find out all of the pertinent facts known to his own agents and such facts as are readily ascertainable and to acquaint his attorney with them." (See also 32 Cal.Jur.2d, Malicious Prosecution, § 29, pp. 79-80.)

Hence the instruction accords with the law applicable to this issue.

Defendants Robinson & Associates submitted the following special interrogatory: "Was the defendant Richard Leuschner an independent contractor with regard to the other defendants?"

The court did not submit it to the jury, and Robinson & Associates assert this constituted reversible error. This was a matter within the sound discretion of the trial judge, however, as is pointed out in *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611, 629 [61 P.2d 83], cited by defendants.

The court fully instructed the jury on the issue of whether Leuschner was an independent contractor and even though it might have been advisable to submit the special interrogatory to the jury, we conclude there was not an abuse of discretion. (*Ferro* v. *Citizens Nat. Trust & Sav. Bank*, 44 Cal.2d 401, 414 [282 P.2d 849].)

Defendant Leuschner argues that the damages awarded were so excessive as to indicate passion or prejudice on the part of the jury. Plaintiff's family status, his position in the community, his activities in the church, the schools and the Farm Bureau are set out in some detail in the facts stated above. We will not repeat them, nor try to reweigh the evidence. We point out that the trial court, on a motion for new trial, reduced compensatory damages from $25,000 to $15,000.

In the eyes of the trial court the judgment with the remission, together with the punitive damages against defendant Leuschner, was justified by the evidence. Appropriate is the language found in *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, at page 507 [15 Cal.Rptr. 161, 364 P.2d 337]: " 'The powers and duties of a trial judge in ruling on a motion for new trial and of an appellate court on an appeal from a judgment are very different when the question of an excessive award of damages arises. The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge the credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. [Citing cases.] When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors.' In *Holder* v. *Key System,* 88 Cal.App.2d 925, 940 [200 P.2d 98], the court, after quoting the above from the Holmes case added: 'The question is not what this court would have awarded as the trier of the fact, but whether this court can say that the award is so high as to suggest passion or prejudice.' "

We do not find the award here, when viewed in the light of the evidence, so high as to suggest it resulted from passion or prejudice.

The judgment is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied April 13, 1966, and appellants' petition for a hearing by the Supreme Court was denied May 11, 1966.